Tyler *v.* Pittsburgh Railways Company, Appellant.

Argued October 1, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, PATTERSON and PARKER, JJ.

*James R. Orr,* with him *J. R. McNary,* for appellant.

*T. Robert Brennan* and *Jos. A. Richardson,* with them *A. E. Sheridan,* for appellee.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, November 24, 1941:

A single question is presented to us on this appeal: Should we further reduce the verdict and judgment which plaintiff recovered? The verdict was $50,000. The court in banc, consisting of three judges, one of them the trial judge, reduced the verdict to $30,000.

Appellant in its brief states: "The verdict, as reduced to $30,000, is still grossly excessive, but defendant cannot suggest a fair basis for a further reduction under the testimony." It asks us to order a new trial. The plaintiff, through her counsel at the Bar on oral argu-

ment and in her brief, requests that a new trial shall not be granted if we reach the conclusion that the verdict was too high, because she does not wish to be subjected to the ordeal of another trial, as "her condition at the present time is such that her mere movement is agony."

In this class of cases, where the only matter to be passed upon by us is the alleged excessiveness of the verdict, it is difficult to decide whether the award is too high to be sustainable. It is obvious that the jury exercised no judgment whatever and was evidently carried away by sympathy. We have, however, the opinion and conclusion of three able judges, who have had wide experience in determining the justness of verdicts in cases of this kind.

Plaintiff, a passenger, was injured in a collision between two of defendant's cars on November 1, 1938. Liability to respond in damages is not denied by defendant. It did not controvert the testimony of her physicians, but accepted their testimony as true and correct. Defendant offered no testimony at all. As a result of the violent collision, plaintiff was thrown against an upright pole in the car and was rendered unconscious for a time. The surgeon, who attended her from shortly after the accident until the day of the trial, testified that she had injuries to her lower left back, left lower leg and knee, bruises and contusions on the left side of the chest and a high degree of nervousness due to shock; that the injuries to her chest were very painful and did not respond to local injections. She was admitted to the hospital on September 4, 1939, suffering great pain. While there the periosteum was stripped from the fifth and sixth ribs in order to alleviate the pain. She remained in the hospital seventeen days. Thereafter the pain recurred and injections to reduce it were resumed. She was readmitted to the hospital and the two ribs and a painful nodule in her left buttock were removed; to decrease pain, the intercostal nerves of the chest wall on the left side were severed. There were X-ray indications of the fracture of two other ribs. At the time of the trial there were per-

manent injuries to the lumbar and left sacroiliac spine, a permanent deformity caused by the removal of two ribs and pain due to an involvement of the intercostal nerves. She had a psychoneurosis brought on by the pain of her injuries. The surgeon testified that the condition in her ribs and in the lower back should be considered permanent unless some improvement is made, which he could not see. He was of opinion that her nervous condition will subside at some indefinite time in the future with proper treatment and rest. She had incurred expenses, doctor's bills, hospital and nursing bills and for assistance at her shop and in her home amounting to $4,554.30. She was 41 years of age, engaged in business on her own account in the making of corsets, particularly surgical corsets, and because of inability to personally care for her business had incurred expenses in connection with additional help needed in her store and in her household. At the time of trial, she was paying employees in her shop, not necessary to be employed prior to the accident, $35. a week and a housekeeper at her home $8. a week.

In view of the seriousness of plaintiff's injuries and her condition resulting therefrom, of the losses that she has sustained, the pain and suffering which she has endured and which it seems she will continue to suffer, and particularly in view of the careful consideration given to the question of the size of the verdict by the trial judge and the court in banc, we are not inclined to disturb the amount awarded. "It is the primary duty of the trial court to deal with excessive verdicts and when it has done so, we will be very slow to interfere": *Rebel v. Standard Sanitary Mfg. Co.*, 340 Pa. 313, 320, 16 A. 2d 534. In order for us to act the verdict must be "so grossly excessive as to shock our sense of justice and to indicate a clear abuse of discretion on the part of the court below": *Maselli v. Stephens,* 331 Pa. 491, 496, 200 A. 590; *Brown v. Paxton,* 332 Pa. 260, 2 A. 2d 729; *Mashinsky v. Phila.,* 333 Pa. 97, 3 A. 2d 790.

The judgment is affirmed.