## Menarde *v.* Philadelphia Transportation Company, Appellant.

498

Argued November 24, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*James L. Stern,* with him *Jay B. Leopold,* for appellant.

*B. Nathaniel Richter,* with him *Frank Carano* and *Richter, Lord & Farage,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, March 22, 1954:

Plaintiff, Anita Menarde, brought an action in trespass against the Philadelphia Transportation Company which resulted in a verdict in her favor in the amount of $50,000. Defendant filed a motion for new trial which was denied provided plaintiff remitted all of the verdict in excess of $25,000. Such remittitur was filed and judgment entered in the amount of $25,000, from which defendant appeals. Defendant's negligence and plaintiff's freedom from contributory negligence are not

questioned in the appeal and the only matters before us concern trial errors relating to the items of damage recoverable and certain alleged prejudicial remarks of plaintiff's attorney.

On the morning of May 16, 1949 the plaintiff was injured while alighting from a street car of the defendant. The accident occurred due to the premature starting of the trolley car which caused plaintiff to fall forward into the street. Treatment for injuries to her left ankle, right knee and both hands was administered at Mt. Sinai Hospital; these being the only injuries perceptible at that time. Her family physician, Dr. Martin J. Koebert, attended her in the early evening of the same day to alleviate any remaining pain or shock.

Upon disrobing later that evening for the first time following the accident, plaintiff noticed a discoloration on her right side, including her breast. She recalled Dr. Koebert the following day because the bruised right breast had grown slightly darker over night. He examined the breast and observed the discoloration but having discovered no nodules or lumps, he was not overly concerned and merely prescribed the application of hot compresses to the bruised area. For the first month or two following the accident Dr. Koebert made periodic examinations of the breast and sometime within that interval the discoloration disappeared and the breast seemed perfectly normal and remained so for two months. At the end of July or the beginning of August plaintiff detected a lump on her breast at the exact spot where there was discoloration previously. She was referred to Dr. Sidney Beck, a cancer specialist, who recommended and performed a radical mastectomy, which entailed the removal of the entire breast and the underlying muscles and the tissues in the arm pit.

At the time of the accident the plaintiff was unmarried, thirty-seven years of age and in good health. Prior to that time she had studied the piano, dancing, dramatics, voice culture and two foreign languages with the expectation of becoming a professional singer. She held a scholarship in the Settlement Music School and The Philadelphia Musical Academy and sang at various church functions, earning approximately $400 to $500 a year.

The principal point urged on appeal is that plaintiff failed to meet her burden of establishing by legally competent evidence a causal connection between the accident and the cancer which later developed.

In order to link her impaired physical condition to the defendant's conduct, the plaintiff was forced to depend on expert medical testimony because scientific knowledge was required for the elucidation of the question. Having selected experts to speak in her behalf, it has been held essential that no absolute contradictions appear in their ultimate conclusions, although minor points of difference between such witnesses would not necessarily exclude their testimony: *Mudano v. Phila. Rapid Transit Co.*, 289 Pa. 51, 61, 137 A. 104. Moreover the expert has to testify, not that the condition of claimant might have, or even probably did, come from the accident, but that in his professional opinion the result in question came from the cause alleged. A less direct expression of opinion falls below the required standard of proof and does not constitute legally competent evidence: *Vorbnoff v. Mesta Machine Co. et al.*, 286 Pa. 199, 206, 133 A. 256; *Powell v. Risser*, 375 Pa. 60, 68, 69, 99 A. 2d 454; *Wargo v. Pittsburgh Railways Company*, 376 Pa. 168, 172, 101 A. 2d 638.

Applying these tests to the present case, in our opinion the medical testimony offered in support of

the claim met the required standard and was not so contradictory that the finding of the jury was predicated upon speculation. Dr. Koebert, who was associated with the plaintiff's case from the time of the accident, testified on direct examination that in his opinion the injury was the direct cause of the cancer, and the salient portions of his testimony on cross-examination are as follows: "Q. Could there possibly have been something else which contributed to this cancer? A. I do not think we are able to say. Q. Can we say that this particular bruising or injury, to the exclusion of everything else, caused this cancer? A. I believe other conditions which had happened, and according to the highlights of the case as I examined her originally, and in that it arose in that immediate area, I believe that this cancer was caused directly by the injury. Q. Is it not possible that something else contributed to it? A. Within the knowledge of man, I think not. . . Q. Would you say that it is impossible that there was any other thing that could have caused this cancer other than the blow? A. In this case I would say not.".

On redirect examination he was asked: "Q. Doctor, is there even the slightest idea of speculation in your mind as to the judgment you have come to in concluding that this accident caused this cancer in this girl's body? A. I believe that this accident was the direct cause of this woman's cancer. Q. And is that judgment based on any speculation whatsoever in this case? A. Not in this case, no.".

Dr. Beck, the other expert called by the plaintiff, was in charge of the breast cancer clinic at the American Oncologic Hospital in Philadelphia. Basing his ultimate conclusion on certain accepted criteria, which he asserts were present in this case, he testified that he must conclude that the trauma sustained in this accident caused the cancer. While it may be said that his

testimony was characterized by some indefiniteness or uncertainty, such testimony pertained principally to the cause of cancer in general and the disparity of opinion which exists among outstanding authorities in this field as to whether a single trauma can produce cancer. Where, as here, a person who has enjoyed prior good health sustains an injury to a particular member and some three months thereafter a malignant nodule appears in precisely the same location as the bruise, and two doctors conclude that the cancer resulted from the trauma, causal connection between the accident and the disease is sufficiently established. See *Smith v. Primrose Tapestry Co.*, 285 Pa. 145, 131 A. 703.

In the *Mudano* case, supra, the medical experts flatly contradicted each other as to whether the ulcerated condition of the plaintiff's heel resulted from the accident. Unlike the instant case, the medical proof was totally irreconcilable. Dr. Koebert and Dr. Beck did not differ in their ultimate conclusion that the precise traumatism caused the injury. Since their statements exhibit no absolute contradiction respecting the fundamental issue, it was legally competent evidence and was properly submitted to the jury.

Defendant's second contention that the trial judge committed fundamental error in his charge is clearly untenable. The particular portion complained of reads as follows: "Plaintiff is entitled to recover for all the injuries caused by defendant's negligence. This question of causation of the particular injuries complained of is for you, the Jury, to determine from the evidence before you. For the defendant to be liable for plaintiff's injuries, you need not find that defendant's negligence was the sole cause of such injuries. A wrongful act may be the legal cause of damage though other causes may have joined in producing the final result. It is sufficient if you find that defendant's conduct, or

negligence, was a substantial factor in bringing about the injury complained of. That is, if you determine that defendant's negligence was either the sole cause or a substantial contributing cause of the injury, plaintiff is entitled to recover. The fact that some other factor may have been a contributing cause with the negligence of the defendant does not relieve the defendant from liability unless defendant shows that such other cause would have produced the injury complained of independently of his negligence. And, even though concurrent causes may have contributed to plaintiff's injury, if defendant's negligence was a substantial factor in producing the result, in contributing to the injury, defendant is liable for the full amount of damages sustained, without any apportionment or diminution for the other cause or causes.".[1]

Defendant cannot seriously argue that the principles of proximate cause are confined to the question of basic liability alone. The doctrine of causation has always been employed in a dual capacity. More often it is called into play to determine the question of basic liability but quite frequently it is applied in fixing responsibility for particular items of damage where an injury results in unexpected consequences. It is axiomatic that a tortfeasor is liable for all direct and proximate consequences of his unlawful act: *Offensend v. Atlantic Refining Company*, 322 Pa. 399, 402, 403, 185 A. 745; Restatement, Torts, §461. The rule that where two tortfeasors are guilty of concurrent negligence each is responsible for the full amount of the resulting damage is equally applicable where one of the operative agencies, instead of being a tortfeasor, is a force of nature: See *Carlson et al. v. A. & P. Corrugated Box Corporation*, 364 Pa. 216, 224, 72 A. 2d 290. The

---

[1] See Restatement, Torts, §431.

defendant by cross-examination attempted to elicit from the plaintiff's medical witnesses that other causes in addition to trauma could have contributed to the injury. Having thus suggested that other causes might possibly have played a part in bringing about the injury, defendant is not in a position to complain about the relevancy of this portion of the charge which was an accurate statement of the law.

It is urged by the appellant that it was prejudicial error for the court to admit medical testimony concerning the possible recurrence of cancer. Dr. Beck was asked on direct examination to give a *prognosis* of the plaintiff's condition based on his knowledge of the case and his past experience. In *Stevenson v. Pennsylvania Sports and Enterprises, Inc.*, 372 Pa. 157, 93 A. 2d 236, where a doctor was permitted to give a prognosis as to after-effects of a fractured heel bone, we said at p. 165: ". . . The problem here involved is one of prognosis on which a doctor cannot be required to express his opinion with the definiteness required in a causation question. In many cases of personal injury the honest opinion of a doctor may well be that a plaintiff will 'gradually improve' or that the injury may 'possibly be permanent or may possibly get better within a year.'. This uncertainty of honest medical opinion should not be the basis for any finding by the jury of *permanent* injury but is sufficient, on the other hand, for the jury to find some future disability. . .". In the present case, although there was no evidence of any recurrence at the present time, any aspects of cancer are enveloped by an air of uncertainty and the threat of reactivation never subsides. Dr. Beck testified that a person inflicted with cancer is never discharged from a doctor's care and there is no certitude as to if and when another nodule will occur or whether the cancer will metastasize. In answer to the question, ". . . What

is the likelihood of this woman being cured, completely cured?", he replied, "We do not use the word 'cure' in discussing cancer. We use nowadays the term five-year survival rate or ten-year survival rate, or any given time survival rate.". Subsequently he testified to the effect that his examination of plaintiff indicated her survival for at least five years, and examination at the end of that period would be required for further estimate of her longevity. He also testified: "This, as we know it today, is an extremely early case and therefore the prognosis, all things being equal, should be good.". Defendant cites *Lorch v. Eglin*, 369 Pa. 314, 85 A. 2d 841, where the plaintiff suffered a head injury causing occasional leakage of cerebrospinal fluid through the nose, and a doctor was permitted to testify that such a leakage, if it became infected, could produce meningitis with the possibility of death therefrom, and the court permitted the jury so to find. We reversed because obviously the potential future condition or disease testified to was too remotely related to the physical condition resulting from the accident. The prognosis was not limited, as in the *Stevenson* case, to the possibility of some future disability ordinarily expectant from the personal injury there sustained.

It is unnecessary to decide whether the present case falls within the ruling of the *Lorch* case or the *Stevenson* case, for the testimony under consideration was stricken before the closing addresses of counsel, and the jury emphatically instructed no less than three times during the court's charge to dismiss from their deliberation any consideration whatever of possible future development of cancer. See *Boyd v. Smith*, 372 Pa. 306, 311, 94 A. 2d 44. Moreover defendant's counsel expressly acquiesced in the reception of the testimony with the understanding that the court would subsequently rule on its admissibility. He belatedly com-

plained that the testimony created a morbid atmosphere prejudicial to defendant. The inherent untoward consequences of cancer are matters of common knowledge and we do not believe that Dr. Beck's vague and uncertain prognosis added anything to the jury's appreciation of the seriousness of this dreaded disease. In any event, under all the circumstances, we cannot declare the court guilty of an abuse of discretion in denying defendant's motion for a new trial on this ground.

Appellant's next complaint is that the plaintiff's counsel resorted to highly objectionable and improper remarks. It appears from the record that plaintiff's counsel in his closing argument to the jury commented on the failure of the defendant to call medical experts to rebut plaintiff's evidence on causation. The defendant called Dr. Daniel J. Kennedy who had examined the plaintiff about a month after the accident occurred when plaintiff's complaints were directed to the injuries to her ankle, leg, knees and hands. He did not see or examine her after the development of the breast condition and he admitted that he was not an expert on cancer. The defendant did not call any experts, although there was endeavor, through the testimony of Dr. Kennedy, to contest plaintiff's position that the cancer was traumatically caused. The defendant relies upon the case of *Rice v. Hill et al.*, 315 Pa. 166, 172 A. 289, where plaintiff's counsel stated to the jury that the defendants had a doctor in court and they didn't call him to dispute the plaintiff's medical testimony. The record did not disclose that the defendants' doctor referred to was in court, nor that he had examined the plaintiff. The court did nothing to eliminate or reduce the effect of the remark and an assignment of error based upon the court's refusal to withdraw a juror because of the remark was sustained. Although there are differences in the circumstances attending the re-

marks in the *Rice* case and the present one, the trial judge here considered the remark by plaintiff's counsel as objectionable and immediately instructed the jury to completely ignore the comment, saying, "I will refuse your motion, Mr. Stern, [defendant's counsel] but I will say to you, Ladies and Gentlemen of the Jury, that under no circumstances are you to consider that the company's failure to present other testimony has any bearing whatsoever on the case. You are to decide this case on the basis of the testimony that you have heard and you are not to draw any inference whatsoever from the failure of either party to present other witnesses. You will restrict yourself, Mr. Richter, to the testimony that has been presented here in your argument.". Assuming that the remark was improper, we do not consider it to have been so prejudicial that it was not cured by the instructions to disregard. With respect to defendant's complaint based on plaintiff's attorney's question to a police officer asking if defendant's conductor had been "slated" for a hearing, it was immediately disclosed that he was cleared without a hearing and the motion for withdrawal of a juror by defendant's counsel was properly denied.

Defendant's counsel also complains of the request made by plaintiff's counsel for permission from the court to have his client retire from the court room when he was about to interrogate Dr. Beck relative to the recurrence of cancer. If counsel was concerned about the effect of the doctor's testimony upon his client, he could have requested her to withdraw in this civil proceeding without asking the approval of the court, and defendant complains that this was merely a dramatic gesture to emphasize the fatal possibilities of the disease. If defendant's counsel considered the plaintiff's withdrawal and the permission requested of the court as prejudicial, objection should have been made by him

to enable the court to consider the motive, propriety and effect of the incident. At best the matter was one for the exercise of the discretion of the trial judge, to whom no complaint was made. We do not think the incident warranted the withdrawal of a juror, even if a motion therefor had been made.

We have given consideration to other complaints by the defendant as to the remarks and conduct of plaintiff's counsel and find nothing so prejudically harmful as to require a new trial. The trial produced spirited exchanges between counsel, and the lower court was in a much petter position to evaluate the effect the matters complained of would have on the jury. The propriety of counsel's arguments and remarks are to be determined by the trial court under all the existing facts and circumstances at the trial: *Narciso v. Mauch Chunk Township,* 369 Pa. 549, 551, 552, 87 A. 2d 233. A motion to withdraw a juror is addressed to the sound discretion of the trial judge and his refusal to withdraw a juror will be reversed only for a palpable abuse of discretion: *Clark v. Essex Wire Corporation,* 361 Pa. 60, 65, 63 A. 2d 35.

Finally, appellant contends that the verdict as reduced is still excessive. We do not agree. The plaintiff's medical bills to the date of trial amounted to $764.55. Her loss of earnings between the accident and the trial, predicated upon the sum she earned by singing at weddings and funerals, would aggregate about $1,250. But these items constituted but a minor part of the damage she suffered. In addition to physical pain and suffering, the amputation of her breast caused a lasting disfigurement which has and will continue to cause mental suffering in humiliation and embarrassment. See *Burgan v. Pittsburgh,* 373 Pa. 608, 96 A. 2d 889; *Studebaker et ux. v. Pittsburgh Railways Company,* 260 Pa. 79, 103 A. 532. The plaintiff testified that

she has a contralto voice and that the removal of chest muscles in the cancer operation has ended her singing career. She has thus suffered a loss of future earning capacity. When all of the present and future elements of damage suffered by the plaintiff and directly attributable to the accident are considered, we cannot say that the verdict as reduced is so excessive as to shock our sense of justice, or indicate a clear abuse of discretion on the part of the court below. See *Tyler v. Pittsburgh Railways Company,* 343 Pa. 179, 181, 22 A. 2d 738.

Judgment affirmed.