## Papa v. Pittsburgh Penn-Center Corporation

*Kenneth Behrend*, for plaintiffs.

*William C. Walker*, for defendant.

OLBUM, J., August 6, 1965.—Before this court in this trespass action are defendant's motions for judgment n.o.v. or, in the alternative, for a new trial.

This litigation resulted from a fall by the wife-plaintiff in a common hallway of a multiple-tenanted building owned by defendant corporation. The jury returned a verdict of $25,000 in favor of the wife-plaintiff and of $15,000 in favor of the husband-plaintiff. The husband's verdict was for medical expenses and loss of consortium.

Viewing the evidence, together with all reasonable inferences therefrom, in the light most favorable to plaintiffs, the verdict-winners, as we must in considering a motion for judgment n.o.v. (Hay v. Baltimore & Ohio Railroad Co., 415 Pa. 190, 192), the following facts are established:

On February 18, 1958, between 1 p.m. and 2 p.m., Mrs. Papa went to the Penn-Center Building at 6124 Centre Avenue, a small office building owned by defendant in the City of Pittsburgh, to pay a loan installment at the office of Beneficial Finance Company, one of several tenants who occupied the second floor of the building. It was a cold, snowy day; there had been some accumulation of snow, and the streets were wet and slushy.

The building had no elevator, and in order to reach her second floor destination, Mrs. Papa had to ascend

two flights of stairs, which were separated by a landing. She entered the building and ascended the two flights of stairs. As she reached the second floor hallway, Mrs. Papa noticed an accumulation of water covering the entire width of the hallway at the top of the stairs, which allowed no room for circumvention. She walked down the hallway to the Beneficial Finance Company office and transacted her business, which consumed five to 10 minutes. She returned along the hallway to descend the stairs, holding her purse and a box of candy, which she had purchased earlier, and as she was reaching for the handrail at the place where the water had accumulated, both feet went out from under her, causing her to fall down several steps.

Near the point where Mrs. Papa slipped at the top of the stairs, there was a window opening out onto the roof, which window was open at the time of the accident, and to which Mrs. Papa's attention was attracted, because cold air and snow were coming into the building through that window. It appears that the building generally was overheated, and that in order to provide some ventilation for the second floor, an employe of one of the tenants would open the window most every day, even during cold and inclement weather. And when the weather was inclement, rain and snow would come into the building and onto the stairs and the hallway. The hallway floor was of smooth, red tile, which was very slippery when wet, and the hallway was often wet, especially during the winter months.

The testimony establishes that at the point where Mrs. Papa fell, there was an accumulation of water and dirt which extended across the width of the top of the stairs, through which she had to pass in order to leave the building; that this condition was created *both* by the snow which blew in from the open window and by the snow and slush tracked in by users of the building; and that an accumulation of water in the hallway had

existed since about 9:30 a.m. on the day of the accident, which was at least three and one half hours before the accident, and had grown worse at the time of the accident. Further, there were no floor mats of any kind at any point in the hallway or on the stairs, and defendant provided no janitorial service in the building during daytime hours, because "this building isn't big enough to warrant a full-time janitor service".

## MOTION FOR JUDGMENT N. O. V.

A simple recital of the facts is sufficient to demonstrate that there was ample evidence to support the jury's finding that defendant was negligent. In Lopez v. Gukenback, 391 Pa. 359, 365, the court said:

". . . a landlord of a multiple-tenanted building, reserving control of the common approaches, such as sidewalks, passageways, etc., or parts of the building common to all tenants . . . is bound to keep such approaches and parts reasonably safe for the use of tenants and their invitees and a landlord becomes liable where he either had actual notice of a defective condition therein or was chargeable with constructive notice, because had he exercised reasonable inspection, he would have become aware of it. . . (citing cases)".

Mrs. Papa slipped and fell in an accumulation of water which exposed her to an unreasonable risk of harm. While there was no evidence of actual notice of this condition on the part of defendant, there was evidence that the unsafe condition had existed for several hours prior to the accident, which the jury could find was sufficient to charge the landlord with constructive notice. Had the landlord performed a reasonable inspection, he would have become aware of this condition. Even without any inspection, the landlord should be expected to anticipate that when it is snowing, persons entering a building will track in snow and slush, and that *some* mopping up procedure is neces-

sary from time to time to keep a smooth tile floor in reasonably safe condition for business visitors. See Katz v. John Wanamaker Philadelphia, Inc., 381 Pa. 477; Flora v. Great Atlantic & Pacific Tea Company, 330 Pa. 166; Cohen v. Food Fair Stores, Inc., 190 Pa. Superior Ct. 620.

Since counsel for defendant in his brief does not pursue his point that the wife-plaintiff was guilty of contributory negligence as a matter of law, no extended discussion of that point is necessary. At the time of the accident, Mrs. Papa was leaving the building by the only avenue of egress available to her, and whether she exercised reasonable care for her own safety was for the jury to determine. Contributory negligence as a matter of law ". . . should be declared only in a very clear case and only where the evidence . . . is so clear and palpable that there is no room for fair and sensible men to differ. . . .": Dougherty v. Philadelphia National Bank, 408 Pa. 342, 344. The question of contributory negligence was clearly and carefully submitted to the jury.

The only argument that defendant presses in support of its motion for judgment n.o.v. is that the negligence of defendant, if any, was not the proximate cause of the accident, and was superseded by the act of a tenant in opening the window and permitting snow to enter, and that this issue should at least have been submitted to the jury, which was not done. It is true that there was testimony to the effect that an employe of one of the tenants in all likelihood opened the window on the day of the accident, allowing some snow and water to accumulate in the hallway at the top of the stairs. It is also true that the tenants never notified the landlord of this practice of opening the window in the winter to mitigate the heat in the building. Other testimony, however, clearly indicates that the wet condition of the steps and hallway was due, at least in part, to the snow

and slush tracked in by the business invitees of the second floor tenants. *Without regard to the open window*, therefore, the accumulation of water that resulted from the snow and slush which was tracked into the building was "a causative factor of the accident", or "a substantial factor in bringing about the harm", which was sufficient to impose liability on defendant. See DeAngelis v. Burns, 404 Pa. 230, 235; Harrison v. Pittsburgh, 353 Pa. 22, 24. Thus, the question of superseding cause is actually academic.

However, assuming, arguendo, that the sole source of the water's accumulation in the hallway where the accident occurred was the opening of the window by a tenant, of which practice defendant was ignorant, this would not exculpate defendant, who was responsible for *maintaining* the common hallways in a reasonably safe condition. Defendant's rental manager admitted that he knew that the hallway became wet in the winter from water tracked up to the second floor. Because it was defendant's duty to maintain the common hallway and stairs, the manner in which, or the reason by which, some corrective measures became necessary to keep the premises reasonably safe does not affect or diminish defendant's duty to maintain, a duty which is imposed by law. The jury found that defendant had constructive notice of the wet and dirty condition of the hallway, that a reasonable inspection would have disclosed it, that defendant had an opportunity to remedy the dangerous condition, and that the dangerous condition was the proximate cause of the accident, or a causative factor of the accident, or a substantial factor in bringing about the harm. This is all that the law requires.

This was not a proper case for a charge to the jury on "intervening and superseding cause". To have an intervening and superseding cause, there must necessarily be an act of *antecedent* negligence. In all of the

cases relied upon by defendant for the application of the doctrine of superseding cause, the defendant who sought to be relieved of liability contended that his *antecedent* negligence was superseded by a second independent causative force which was the proximate cause of the accident. See Skoda v. West Penn Power Company, 411 Pa. 323; Kite v. Jones, 389 Pa. 339; Listino v. Union Paving Company, 386 Pa. 32; DeLuca v. Manchester Laundry and Dry Cleaning Company, Inc., 380 Pa. 484; Kline v. Moyer and Albert, 325 Pa. 357; DeCarlo v. Margolis, 320 Pa. 500. In DeLuca, supra, at 489, the court stated:

". . . an act of negligence which creates merely a passive background or circumstance of an accident does not give rise to a right of recovery if the accident was in fact caused by an intervening act of negligence which is a superseding cause: . . ." (citing cases)

In the instant case, the negligence on the part of defendant did not create a mere passive background for the accident. It was the direct and immediate cause of the accident.

In Kline, supra, the rule is stated, at page 364:

"Where a second actor has become aware of the existence of a potential danger *created by the negligence of an original tortfeasor*, and *thereafter*, by an independent act of negligence, brings about an accident, *the first tortfeasor* is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause". (Italics supplied.)

No matter how the rule of intervening and superseding cause is stated, there must be an act of *antecedent* negligence on the part of the person who asserts a right to be relieved of liability. In the instant case, the negligent act of defendant landlord was the failure to remedy the dangerous condition in the hallway, irrespective of the manner in which the danger arose,

whether by opening the window, or by tracking in of snow and slush, or by a combination of both.

Defendant summarizes its position as follows:

"Even if defendant was negligent in failing to provide janitorial service and in failing to keep the hallway clear, nevertheless the actual cause of plaintiff's accident was the opening of the window by a third person".

This argument is specious. As a simple matter of logic, had defendant kept the hallway clear of snow and slush, regardless of the manner in which it accumulated, the accident would not have happened. Therefore, the cause of the accident was defendant's failure to keep the hallway clear of water. There was no act of negligence which intervened between defendant's negligence and the injury to the wife-plaintiff. A landlord of a multiple-tenanted building cannot evade the duty owed to a business invitee of a tenant by calling attention to the possible breach of another duty owed to plaintiff invitee by one of the tenants who was not made a party-defendant in the action against the landlord. At the very most, defendant might contend that the accident was caused by the combined negligence of defendant and an unknown person who opened the window. This would create concurrent negligence, making both tortfeasors jointly and severally liable, and subject to being sued jointly or separately. See Rodgers v. Yellow Cab Company, 395 Pa. 412, 423. However, this would not serve to diminish defendant's liability here.

In short, the act of a tenant in opening the window and allowing water to accumulate in the hallway could not, even if it were the sole source of water accumulation, relieve defendant landlord of liability to plaintiff, because the negligent act or breach of duty on the part of defendant was *subsequent to, and independent of,* any act of a tenant and was, therefore, a proximate

cause of the injuries sustained. The doctrine of intervening and superseding cause cannot operate in the absence of an act of antecedent negligence on the part of the actor seeking relief from liability, which is intervened and superseded by a subsequent causative force which is the efficient cause of the accident. See Restatement 2d, Torts, §447. We believe the trial court was correct in refusing to submit to the jury the question of superseding cause. Defendant's motion for judgment n. o. v., therefore, must be denied.

## MOTION FOR A NEW TRIAL

Defendant advances two arguments in support of its motion for a new trial. The first concerns an offer of proof by defendant, which the court refused. In the direct examination of Mrs. Papa, the following testimony was given:

"Q. Before February 18, 1958, did you ever *injure your back?*

"A. No sir.

"Q. Were you ever involved in any accidents *to your back* before that time?

"A. No sir". (Italics supplied.)

In Mrs. Papa's crossexamination, she testified as follows:

"Q. Did you have *any other fall* at about the same time?

"A. No sir". (Italics supplied.)

In its defense defendant proposed to call as witnesses a Mrs. Laitsch and a Miss Christopher. Their proffered testimony was to the effect that before the accident involved in the instant case, Mrs. Papa had told them that she had fallen down the steps in Mellon Square and injured herself and was going to sue the city. Counsel for defendant stated that he was offering this testimony (1) because there was medical testimony that in a fall down steps, a person can injure his back without being aware of it at the time;

(2) as proof that wife-plaintiff did not give a complete history to the doctors who testified in her behalf; and (3) to impeach her credibility. Plaintiffs' objection to this offer of testimony was sustained by the court on the ground that defendant, by its offer, did not propose to show by this testimony that in this alleged prior fall, plaintiff had injured some part of her body for which damages were being claimed in the case at bar. Plaintiffs' damage testimony related almost entirely to an injury to wife-plaintiff's back allegedly sustained in the instant case.

The law is clear in Pennsylvania that a witness may not be contradicted on matters not germane to the issue involved: Commonwealth v. Burdell, 380 Pa. 43, 51; Zubrod v. Kuhn, 357 Pa. 200, 203; Commonwealth v. Petrillo, 341 Pa. 209. In Commonwealth v. Petrillo, at page 223, the court stated:

"There seems to be considerable misunderstanding of the rules of evidence relating to the *contradiction of witnesses*. No witness can be contradicted on *everything he testifies to* in order to 'test his credibility.' The pivotal issues in a trial cannot be 'side-tracked' for the determination of whether or not a witness lied in making a statement about something *which has no relationship to the case on trial*. The purpose of trials is not to determine the ratings of witnesses for general veracity. A witness can be contradicted only on matters germane to the issue trying. There is no rule more firmly established than this: 'No contradiction shall be permitted on collateral matters' ".

In the same case, at 224, the court quoted from 3 Wigmore (3rd ed.), §1003, as follows:

"The only true test [of 'collateralness'] is . . ., 'Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction' "?

Gauged by this test, the alleged prior fall in the in-

stant case was a collateral matter. Independently of the contradiction, defendant was not entitled to introduce evidence that the wife-plaintiff simply had fallen on a prior occasion. Whether plaintiff had fallen once or a dozen times, *without more*, was not material to the issue being tried. Testimony concerning any prior fall was not admissible for any purpose unless the injuries from that alleged accident could be connected to those claimed in the present suit, so as to raise the inference of a preexisting condition. Defendant did not offer to prove any such connection.

Defendant relies on the recent case of Bruno v. Brown, 414 Pa. 361, to support the argument that testimony concerning a "prior fall" is admissible for impeachment purposes, even in the absence of proof of a preexisting condition. Bruno favorably cites Commonwealth v. Petrillo, supra, and Zubrod v. Kuhn, supra, to the effect that there can be no impeachment through crossexamination on matters not germane to the issue being tried, unless such matters were first introduced during direct examination. The court also said: "The issue on trial should not be confused through the introduction of collateral matters".

We do not think that the holding in Bruno, which is markedly distinguishable on its facts, controls the instant case. In Bruno, plaintiff, in pretrial depositions, had denied that he had been involved in a prior accident. In the first trial of his case, he persisted in his denial until confronted with the complaint filed in his behalf based on that accident. That trial resulted in a jury disagreement. At his second trial of the same action, he admittedly told the truth regarding his involvement in prior accidents. On crossexamination, defense counsel sought to impeach his general credibility by showing his false testimony in the pretrial depositions and at the first trial. The Supreme Court said that ". . . *under the unique circumstances this case presents*, the excluded crossexamination was

not directed to a collateral matter . . . This clear-cut documentary evidence was, therefore, significant and relevant proof of the plaintiff's inclination to testify falsely under oath . . ." (Italics supplied). There was no such documentary evidence in the instant case, therefore, no such unique circumstances as were present in Bruno.

The kindred question in Bruno involved contradicting testimony. In plaintiff's crossexamination, he was asked whether he had claimed to have suffered a *back injury* as a result of the prior accident in 1953. He answered that that accident resulted in no *back injury* whatsoever. The Supreme Court ruled that the trial court erred in not allowing the defense to present witnesses in contradiction to testify that after the prior accident, plaintiff had complained of a *back injury*. The court reasoned that if plaintiff lied about his past accidents, he might also lie about his claimed present back injury. The court concluded that ". . . *in view of the circumstances presented*, it [the proffered testimony] was relevant to aid the fact finders in assessing the plaintiff's credibility in resolving whether or not his testimony, *as to his present back injuries*, was believable and should be accepted". (Italics supplied).

It is noteworthy to point out that the Supreme Court also said that "Since testimony was absent to show any connection between the injuries in the two accidents, the rejected testimony was not admissible . . . to support an inference of a preexisting condition".

It is also to be noted that the testimony which the trial court erroneously rejected in Bruno related to a prior *back injury*, which was in issue in the case being tried, in which plaintiff was claiming damages for a *back injury*. The testimony rejected by the trial court in the instant case related only to an alleged *prior fall*.

It is our opinion that testimony as to wife-plain-

tiff's alleged conversations regarding a *prior fall*, without more, offered for impeachment purposes, was collateral to the issue being tried, was not material and was not sufficiently relevant to aid the jury in assessing plaintiff's credibility as to justify confusing the issue being tried and prejudicing plaintiffs' case. It would have suggested to the jury, without evidence to support it, and by sheer speculation or conjecture, that Mrs. Papa had injured her back in the "prior fall". Any aid which the proffered testimony might have given the jury in assessing the wife-plaintiff's credibility would have been far outweighed by the disadvantages and the prejudice which would have been generated by admitting such testimony.

In its final argument in support of its motion for a new trial, defendant contends that a juror should have been withdrawn because of improper remarks made by plaintiffs' counsel in his closing address to the jury. The record shows that defendant's counsel interrupted the closing by plaintiffs' counsel, and stated to the court:

"Counsel for plaintiff, in his argument to the jury, has repeatedly referred to the financial condition of the plaintiff, the health of the husband and that he is a sick man, that they have paid bills until they ran out of money and that they will not have any money except what the jury awards today. All of this argument is improper. It is calculated to inflame the jury".

"Counsel are required to stay within reasonable bounds of legitimate argument in making their partisan pleas to a jury": Piwoz v. Iannacone, 406 Pa. 588, 598; Contractors Lumber and Supply Company v. Quinette, 386 Pa. 517. In the latter case, the court added, at page 522:

". . . this does not mean that their speeches may not be spirited, stirring, and accusatory, if the material of the trial supplies them with relevant oratori-

cal ammunition . . . So long as no liberties are taken with the evidence, a lawyer is free to draw such inferences as he wishes from the testimony and to present his case in the light most suited to advance his cause and win a verdict in the jury box".

A review of the record discloses that there was testimony, not objected to by counsel for defendant, that plaintiffs had exhausted their funds paying wife-plaintiff's medical bills. There was also testimony, likewise unobjected to by counsel for defendant, to indicate that the husband-plaintiff was not physically able to work full time. There was also testimony to the effect that the wife-plaintiff was permanently disabled from returning to her work as a restaurant bus girl, and that she had been unable even to do her housework since the accident.

It appears to us, therefore, that plaintiffs' counsel did not take undue liberties with the evidence. A decision whether to withdraw a juror depends upon the exercise of the sound discretion of the trial judge under all the facts and circumstances at the trial: Menarde v. Philadelphia Transportation Company, 376 Pa. 497, 509. See also Bourd v. Berman, 359 Pa. 183, 185. In the opinion of the trial judge, who had an opportunity to appraise the climate of the court room and to evaluate the effect on the jury of counsel's closing, the jury was not inflamed by the remarks of plaintiffs' counsel. Nor does the trial judge believe that the remarks of counsel were designed to persuade the jury to substitute prejudice or sympathy for reasoned analysis of the evidence, or that the jury did so. In his charge, the court urged the jury to assay only the evidence, to base its verdict only on the evidence and the law and to eschew any consideration of sympathy for, or bias against, any party.

The overwhelming weight of the evidence as to liability favored plaintiffs. The extensive medical testi-

mony was sufficient for the jury to conclude that Mrs. Papa, a 40-year-old woman, had suffered a serious, probably permanent injury, which required several hospitalizations and two surgical procedures, and entailed very substantial expenditures. It cannot be said, in retrospect, that the verdicts of $40,000 for both plaintiffs were not supported by the evidence, or that they reflected a departure by the jury from its proper consideration of the evidence in the case.

The trial judge did not feel at the time, and we do not feel now, that counsel's remarks were of such a nature as to warrant the withdrawal of a juror.

The motion for a new trial is also refused.

### ORDER OF COURT

Now, August 6, 1965, defendant's motions for judgment non obstante veredicto and for a new trial are hereby refused, and it is ordered that judgment be entered upon payment of the verdict fee.

Eo die, exception noted to defendant and bill sealed.