Dissenting Opinion by
Hanntjm, J.:
This is an action in trespass which was tried non-jury before Sloane, P. J. The trial judge entered verdicts in favor of the husband-plaintiff in the sum of $2,000.00 and in favor of the wife-plaintiff in the sum of $10,000.00. The defendant’s exceptions were dismissed by the court en banc and judgments were entered on the verdicts, from which the defendant has appealed.
On January 11, 1965 plaintiff-wife driver sustained personal injuries in an automobile accident with an automobile driven by defendant. As a result of the impact, her nose, mouth and ribs came in contact with the steering wheel of her car.
I cannot agree that the wife-plaintiff established by competent medical evidence that there was a causal relation between the accident and the dental treatment which she received.
Prior to the accident the wife-plaintiff had á partial plate attached to six of her own teeth in the lower part of her mouth. She had no natural teeth in the upper part of her mouth.
*550 The dental injuries were first treated by her husband, Benjamin DeVirgiliis, a practicing dentist. He treated her for almost eighteen months beginning January 11, 1965, and during this period attempted to save the involved teeth by constructing, fitting and adjusting several restorative devices, including bridges and plates. After extracting the natural teeth, he constructed and fitted his wife with upper and lower dentures in April of 1966.
In June of 1966, Mrs. DeVirgiliis began to experience discomfort when wearing these dentures and, at her husband’s suggestion, Charles Egoville, a certified prosthodontist, was consulted. He found they had become overextended, causing ulcerations where the plate was cutting into the soft tissue of her mouth. To remedy the problem, Dr. Egoville constructed and fitted Mrs. DeVirgiliis with two sets of dentures to replace those made by her husband.
On direct examination, Dr. Egoville testified in some detail as to just what he did in his efforts to remedy the situation which he observed. During this direct examination Dr. Egoville was not asked nor did he testify as to the causal connection between the problem, which he saw and for which he treated the wife-plaintiff, and the accident, which occurred eighteen months earlier.
On cross-examination, Dr. Egoville was asked how this ulceration may be caused. He answered that the ulceration may be caused “nutritionally or mechanically.” Dr. Egoville also added: “It’s pretty hard to pinpoint what the cause is.” The Doctor did testify that he didn’t know why the tissue change took place in this case.
It is the defendant’s contention that the plaintiff did not meet her burden of proving that the condition for which Dr. Egoville treated her was caused by the accident.
*551 There is no doubt but that the plaintiff must establish a causal connection between the accident and the injuries for which she claims compensation, but the degree of the proof required depends upon the nature of the injuries. If scientific knowledge not possessed by the jury is required to connect the plaintiff’s injuries with the defendant’s negligence, then a medical expert must testify that in his professional opinion the disabilities in question came from the cause alleged: Menarde v. Philadelphia Transportation Company, 376 Pa. 497, 103 A. 2d 681 (1954). On the other hand, where the injuries are such that they flow so naturally and probably from the defendant’s negligent act that the jury does not require scientific knowledge, expert testimony is not necessary, or, as was stated in Paul v. Atlantic Refining Company, 304 Pa. 360, 156 A. 94 (1931), “where the disability complained of is a natural result of the injuries a jury may be permitted to so find, even in the absence of expert opinion.” See also Fenstermaker v. Bodamer, 195 Pa. Superior Ct. 436, 171 A. 2d 641 (1961).
The plaintiff and the court below reasoned that the facts in the present case fall into the latter category. Judge Sloane, speaking for the court en banc, said: “His [Dr. Egoville’s] treatment was the natural, necessary, indeed the obvious consequence of the accident which a trier of fact was able to conclude upon without the help of expert testimony.” I cannot agree.
Dr. DeVirgiliis, husband of plaintiff-wife, was asked, based on examination he performed and the history that he received, whether he had an opinion, with reasonable medical certainty, as to the cause of his wife’s dental injuries. He had an opinion as follows: “That those four incisors lost their periodontal attachment due to a blow — a strong blow — sustained in the accident we are discussing today.”
*552 It is true that the strain on the two remaining teeth cuspids necessitated their subsequent extraction but there is not in this record any positive testimony to support a causal relation between the accident and Dr. Egoville’s treatment. Wife-plaintiff was asked on cross-examination: “Q. Then why did you need the second set of uppers that Dr. Egoville made? A. Well, may Dr. Egoville answer these questions? Me. Goldman: He will be here to testify. The Witness: I can’t answer that. The Couet: If you can’t answer, if you don’t know, say you don’t know. The Witness : I don’t know.” The wife-plaintiff selected an expert to speak in her behalf but did not ask Dr. Egoville on direct examination his opinion to causally relate his treatment.
The following testimony was brought out on the cross-examination of Dr. Egoville: “Q. Well, Doctor, do you know what caused this change, the change in this case? A. It’s pretty hard to pinpoint what the cause is. As an observer, a professional observer, I know that the cause was that the denture was cutting into the tissue. And that was because of tissue changes. Q. But, Doctor, you don’t know why the tissue changes happened? A. You cannot determine that unless you would go through a series of examinations by a chemical analysis.”
If the medical expert himself cannot “pinpoint the cause,” it follows that the situation is not so obvious that the trier of fact can determine that the difficulty flowed naturally and probably from the defendant’s negligence.
Furthermore, Dr. Egoville testified that “There may be a multiplicity of factors involved. It may be nutritional, it may be mechanical. . . .” In Curry v. Willson, 301 Pa. 467, 152 A. 746 (1930), it was said: “It is true that where an injury may be the result of two *553 causes, for only one of which the defendant is liable, the burden is on the plaintiff to individuate the proximate reason of the damage, if there is to be a recovery.”
In this case, it may be or even probable that the dentures furnished by Dr. Egoville were made necessary by the accident, but there was no medical testimony to that certainty. Conjecture permits an opposite view that they may have been made necessary for other reasons, improper fitting or change in plaintiff’s physical condition not related to the accident. There was no evidence to individuate the proximate cause and it was the plaintiff’s burden to establish that the result did come from the asserted cause.
I believe that the court below erred in attributing to Dr. Egoville, selected by plaintiff to speak in her behalf, the requisite degree of certainty required of a witness who must testify that in his opinion the result did come from the asserted cause.
I would reverse the judgment of the court below and return the record to it with directions to reinstate the motion for a new trial and reduce the wife-plaintiff’s verdict accordingly.
Watkins, J., joins in this dissenting opinion.