Interstate Truck Service, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board, John L. Bradford and Glen Cartage Company/Artim Transportation Systems, Inc., Respondents.

Argued February 8, 1979, before Judges ROGERS, BLATT and MACPHAIL, sitting as a panel of three.

*William K. Herrington,* with him *Weis & Weis,* for petitioner.

*John J. Morgan* and *James R. Hartline,* with them *Evans, Ivory & Evans,* and *Thomson, Rhodes & Grigsby,* for respondents.

OPINION BY JUDGE ROGERS, April 16, 1979:

Interstate Truck Service, Inc. (Interstate) appeals from a decision of the Workmen's Compensation Appeal Board that John L. Bradford, a truck driver, suffered totally disabling injuries while in its employ.

Bradford sustained compound fractures of both legs on May 27, 1972 when he was struck by an automobile while on foot crossing a road in Wheeling, West Virginia. He was returning to his truck from a restaurant at the time of the accident. The compensation authorities determined that he was injured while in the course of his employment. Bradford initially filed a claim petition on December 3, 1973 against Glen Cartage Co./Artim Transporation System, Inc. (Artim), but at the first hearing the referee continued the case and advised Bradford to obtain legal counsel because the possibility existed that a claim should be brought against Interstate also. Claimant filed a claim petition against Interstate on March 25, 1974.

Much of the difficulty in attaching liability for compensation in this case was created by a change in employment relationships shortly before Bradford's accident. On January 4, 1972, Bradford entered into a master lease[1] with Artim. At that time one Robert Robert was the terminal manager and commissioned agent of Artim's terminal and was responsible for assigning loads to Bradford and other Artim operators. On May 8, 1972, Robert severed his relationship with Artim; on May 16, 1972 he became an authorized agent of Interstate.

During May 1972 Bradford formed the intention to terminate his master lease with Artim and to enter a master lease with Interstate. A Mr. Moore, Interstate's Director of Safety and Personnel, testified that Bradford applied for employment with Interstate in

---

[1] To provide an understanding of the difference between master leases and trip leases we adopt the general description provided in the brief for respondent, Glen Cartage Co./Artim Transportation System, Inc.:

It is common in the trucking business for a carrier which owns no trucks of its own to establish a fleet of equipment and drivers through leasing arrangements. These so-called 'master leases' pledge an owner and his truck to the services of the master carrier. Freight is then procured and assigned by the master carrier's agent. In return the driver-owner receives payments for both equipment rental and driver's wages. These amounts are computed as fixed percentages of the tariff charged. Leased equipment is sometimes loaned to another carrier under a 'trip lease,' i.e., a sublease for a single trip on behalf of another carrier. Under I.C.C. regulations trip leasing is permitted only with the consent of the master carrier. In return for its subletting the vehicle, the master carrier receives a percentage of the gross revenue generated by the haul minus advances made to the driver by the sublessee. Under I.C.C. regulations this sum must be paid to the master carrier and not directly to the driver or owner. The master carrier then makes distribution of the money to its driver or owner in accordance with the terms of their master lease.

Martin's Ferry, Ohio on May 19, 1972, took a physical examination, and returned to Martin's Ferry on May 22, 1972 for the purpose of executing other forms. His Interstate application was not completed because his equipment failed an inspection. He had made the necessary repairs before beginning the trip which culminated in his injury on May 27, 1972.

Our scope of review where the party with the burden of proof has prevailed before the referee and the Board has not taken evidence is limited to determining whether constitutional rights were violated, an error of law was committed or a necessary finding of fact was unsupported by substantial evidence. Questions of credibility and weight of the evidence are for the referee. Interstate contends that several findings of fact made by the referee, which we are about to mention, were not supported by substantial evidence. We disagree. The Board correctly recognized that the referee's finding that Bradford was in the employment of Interstate at the time of his injury was a conclusion of law. The finding that the trip papers and placards were not recovered from the truck after the accident was supported by the claimant's testimony. The finding that Robert Robert severed his relationship with Artim prior to May 27, 1972 was supported by Robert's testimony.

Interstate next says that the compensation authorities erred in failing to make factual findings concerning the validity of trip lease No. 008284N, which it offered in evidence and which it contends shows that Bradford was not hauling for Interstate when he was injured on May 27, 1972. Interstate claims that the trip lease, which describes a trip to begin May 22, 1972, was the only lease in the files naming Interstate and Bradford as the parties and covering a load of steel to be driven by Bradford from the Jones & Laughlin steel plant in Pittsburgh to Huntington,

West Virginia. Bradford testified, on the other hand, that he picked up a load of steel at Jones & Laughlin on May 26, 1972, that he was injured and hospitalized on May 27, 1972 before he reached Huntington and that all of his papers, including a lease relating to that trip, and his driver's log, were lost. He also denied that the signatures on trip lease No. 008284N were his. Thus the evidence posed the question of fact: Was Bradford's presence in Wheeling pursuant to trip lease No. 008284N or pursuant to some other arrangement, the documents for which have been lost? The referee clearly decided that trip lease No. 008284N was not that under which Bradford was in Wheeling. Interstate complains that no explicit finding was made by the referee on this subject. However, the law does not require the referee to make findings more detailed than necessary to support his decision and this he accomplished when he found that the trip papers, including the lease, were not recovered after the accident as Bradford testified. The necessary inference is of course that trip lease No. 008284N was not related to the trip taken on May 27, 1972. *See Peoples Gas Heating Co. and American Financial Insurance Group v. Workmen's Compensation Appeal Board*, 33 Pa. Commonwealth Ct. 530, 382 A.2d 484 (1978). We might add that the signatures purporting to be Bradford's on the trip lease No. 008284N are quite dissimilar to those on the backs of two checks and copies of his operator's license which are in the record.

Interstate also argues that the Appeal Board erred when it concluded that the crucial issue in the case was that of who controlled the manner of Bradford's performance of the duties of his employment during his trip on May 26, 1972—Interstate or Artim. It concedes for the purpose of this argument that Bradford was Interstate's employee on this occasion, and says that such employment must have been under its

standard form of trip lease—either lease No. 008284N or one identical to it—and that the Appeal Board should have referred to the terms of that lease and assigned responsibility not on it but on Artim. The provision which Interstate depends on is the following:

> Lessor [Artim or some other master lessee of equipment] is to pay driver's salary, compensation coverage, and all taxes, State or Federal, based on payroll. Lessor indemnifies lessee [Interstate] against any loss resulting from the injury or death of such drivers.

Interstate says that the Appeal Board should have enforced this term of the lease by making Artim pay the award. The difficulty with Interstate's argument is that the referee rejected its proposal that trip lease No. 008284N applied to the trip on which Bradford was engaged on May 26, 1972 and there is no proof in the record that any other trip lease on Interstate's standard form containing the clause depended on was ever executed. Furthermore, the record shows that Robert Robert who had been Artim's representative had terminated that relationship and had become the authorized agent of Interstate on May 16, 1972, more than a week before he arranged Bradford's trip on May 26, 1972. Indeed, Robert Robert signed trip lease No. 008284N as Interstate's agent on May 22, 1972. Furthermore, the master lease between Artim and Bradford is in the record. With respect to sublease, this document provides only that it, Artim, may sublease and there is evidence that Artim's policy was that owners of the equipment were prohibited from subleasing. It further absolves Artim from responsibility "as if this lease were terminated" if Bradford's equipment were used by any person other than Artim. These circumstances clearly demonstrate what the ref-

eree found—that Artim was not involved in any fashion with Bradford's trip on May 26, 1972.

It is true that the Appeal Board, apparently misapprehending the import of the referee's findings concerning Artim, treated the case as one in which it was called upon to decide which of two lessees, master or trip, should be responsible for compensation. The proper basis for decision, not essentially different in general principles for that used by the Appeal Board, was whether Bradford was in Interstate's employ when he was injured or was working for himself. The referee found:

EIGHTH: That the Claimant, John L. Bradford, on May 27, 1972 at approximately 3:45 a.m., while in the course of his employment with the Defendant, 'Interstate', was struck by an automobile, being driven without headlights, as he was crossing Chapel Street in Wheeling, West Virginia, and received multiple injuries including fractures of the right and left tibias and fibulas.

. . . .

TWENTIETH: That at the time of his accident, the Claimant was hauling a load of steel assigned to him by Mr. Robert Robert and that he was operating under the direction and control of Mr. Robert.

TWENTY-FIRST: That Mr. Robert was an agent and employee of Interstate Truck Service, Inc. on and after May 16, 1972, including May 27, 1972, the date of the accident.

These findings are supported by the testimony of Robert Robert that he arranged the trip for Interstate, that Interstate was paid by the shipper, that Interstate paid him a commission, that Interstate's signs and placards were on Bradford's truck and that

Interstate paid Bradford truck rental and wages. Moreover, Interstate required Bradford to drive through a series of Interstate check points, on pain of paying a fine to Interstate. Bradford was clearly Interstate's employee at the time of his injury. *Workmen's Compensation Appeal Board v. Navajo Freight Lines, Inc.,* 19 Pa. Commonwealth Ct. 25, 338 A.2d 766 (1975).

Order affirmed.

## ORDER

AND Now, this 16th day of April, 1979, the decision of the Board is hereby affirmed. The defendant, Interstate Truck Service, Inc. and/or its insurance carrier, Gulf Insurance Co., is ordered to pay claimant, John L. Bradford, the sum of $94.00 per week from May 27, 1972 for so long as claimant is totally and permanently disabled. It is further ordered that said defendant pay the following medical bills and expenses:

| | |
|---|---|
| (a) Emergency ambulance service by the City of Wheeling | $ 15.45 |
| (b) Ohio Valley General Hospital from May 27, 1972 to May 30, 1972 | 380.42 |
| (c) R. R. Weiler, M.D. of Wheeling, West Virginia for treatment of the Claimant | 313.00 |
| (d) Valley Ambulance Authority for ambulance service from Ohio Valley General Hospital to Sewickley Valley Hospital | 47.00 |
| (e) Sewickley Valley Hospital from May 30, 1972 to June 9, 1972 | 925.11 |
| (f) R. O. Sarver, M.D. of Sewickley, Pennsylvania for treatment of the Claimant | 289.00 |

(g) Holman Chair Rental & Sales for rental of one Hollywood Wheel Chair 15.45

Additionally, Claimant Counsel has incurred the following costs and expenses:

(a) Sewickley Valley Hospital Record 14.00
(b) Ohio Valley Hospital Record 9.00
(c) Dr. Darver's report 10.00
(d) Dr. Weiler's report 50.00
(e) Deposition transcripts 146.90
(f) Professional investigator—18 hours at $7.50 per hour 135.00

Attorney fees are approved at twenty percent (20%) of compensation awarded to claimant. All deferred payments shall bear interest at the rate of ten percent (10%) per annum.