Lehigh Valley Manpower Program, Petitioner *v.*
Commonwealth of Pennsylvania, Workmen's
Compensation Appeal Board and Manuel Sanchez,
Respondents.

Argued June 4, 1981, before Judges ROGERS, BLATT
and PALLADINO, sitting as a panel of three.

*Charles W. Elliott,* with him *John P. Thomas, Thomas & Hair,* for petitioner.

*Edward G. Ruyak,* for respondent, Manuel Sanchez,

OPINION BY JUDGE BLATT, August 25, 1981:

This is an appeal of a decision by the Workmen's Compensation Appeal Board (Board) which reversed a referee's determination and granted total disability benefits to the claimant, Manuel Sanchez.

After a hearing the referee made the following relevant findings of fact:

2. On November 4, 1976 the Claimant was required to move packages of drywall material weighing approximately 175 pounds in the performance of his regular occupational duties for Defendant.

3. Claimant advised his superintendent on November 4, 1976 that he thought he ruined his back, without specifying how, when, or where this occurred, and Claimant left work early.

4. In accord with the hospital records, Claimant went to the Muhlenberg Medical Center on November 5, 1976 at which time he gave Walter F. Stull, Jr., M.D. a history that he suffered severe low back pain for 10 days, that he has had chronic back problems dating back to 1972 and has been treated on several occasions with conservative treatment and obtained temporary relief, and Claimant gave no history of injury with the most recent onset of pain.

5. Claimant received conservative treatment in the Muhlenberg Medical Center, however, pursuant to a lumbar myelogram performed on November 15, 1976, Claimant was discharged on November 17, 1976 with the final diagnosis of acute herniated disc syndrome with

evidence of a herniated disc at L4-L5, and it appears that hospital and physican's expense during said period was paid by Blue Cross and Blue Shield.

6. Due to continuing back pain, Claimant was admitted to the Gnaden Huetten Memorial Hospital on November 21, 1976 at which time he gave a history to Roberto Ballestas, M.D. that he has been experiencing increasing pain, that he has been feeling the pain since 1972 when he was hospitalized for the first time for lifting heavy objects and he has been requesting medical help almost annually because of injuries in the same area, that the pain started approximately 20 days previously when he recalled that no trauma had been suffered but he tried to lift something small and when bending the spine the pain started with lesser intensity and was getting worse during the course of the day, and that in 1976 he was in the hospital for low back pain and he also had several admissions to St. Luke's Hospital in Bethlehem, Pennsylvania.

7. Doctor Ballestas performed a laminectomy of the L4 and and [sic] a diskectomy of the L5 in the right side on November 22, 1976, a urethral dilatation and panendoscopy was performed by J. Dait, M.D. on November 29, 1976, and Claimant was discharged from the hospital on December 4, 1976.

. . . .

10. Doctor Ballestas rendered an opinion that it is possible that the event occurring on November 4, 1976 caused the condition of herniated disc which required surgery[1] and that the

---

[1] At the hearing Dr. Ballestas testified in the following manner:
Q. [C]an you state with reasonable certainty that the manner or the act of transferring these heavy packages of

Claimant has been disabled from working from the time of his hospitlization [*sic*] to at least August 8, 1977, the date Doctor Ballestas' testimony was received into evidence.

The referee concluded that the claimant had not produced unequivocal medical evidence showing a causal relationship between his employment duties on the day in question and his back condition and that he had not met his burden of proving that he had suffered a work-related injury. The Board reversed the referee on the grounds (1) that he had capriciously disregarded the testimony of the claimant and another witness in finding that the claimant's injury was not work-related and (2) that the testimony of Dr. Ballestas that "80% of the possibility was that this was the cause" was not equivocal, but that such language represented the "doctor's equivalent of reasonable medical certainty." The Board granted benefits for total disability and this appeal followed.

When the Board takes no additional evidence and the party with the burden of proof did not prevail before the referee, the referee's findings of fact are conclusive upon us in the absence of a capricious disregard of competent evidence. *Cooper v. Workmen's Compensation Appeal Board*, 49 Pa. Commonwealth Ct. 488, 411 A.2d 859 (1980). We find no such capricious disregard here.

In determining whether or not the claimant's injury was work-related, the referee had to choose between conflicting evidence: the testimony of the claimant and his co-worker that he was injured on the job and the hospital reports showing that the claimant

plasterboard would be a competent-producing result of the injury he complained of, namely, a herniated disc?

A. Continuously, you know, the history of the patient taken, I stated—I give you the explanation if needed—that 80% of the possibility is that this was the cause.

stated on two separate occasions that his pain had begun several days prior to the incident at work and that there had been no traumatic event reported. It is well within the function of a referee as the ultimate factfinder in a workmen's compensation case to give more weight to the statement of a claimant made shortly after his alleged injury than to his testimony at the hearing. *Kerner Co. v. Workmen's Compensation Appeal Board,* 18 Pa. Commonwealth Ct. 282, 335 A.2d 534 (1975). Furthermore, the claimant's co-worker testified, not that he saw the claimant injure himself, but that he heard the claimant call for help and found him "all crouched down, holding his back." Although persuasive, such testimony is only circumstantial evidence as to the cause of the claimant's injury and we cannot say that it is so compelling that it could not be challenged or doubted by one of ordinary intelligence, especially in light of the claimant's long history of back problems and the conflicting evidence contained in the hospital report. *Workmen's Compensation Appeal Board v. Sullivan,* 22 Pa. Commonwealth Ct. 386, 348 A.2d 925 (1975).

In addition, unequivocal medical evidence to establish causation between a work incident and an injury is necessary when the causal connection is not obvious. *Morgan v. Giant Markets, Inc.,* 483 Pa. 421, 397 A.2d 415 (1979). In *Morgan,* our Supreme Court found that testimony to the effect that the claimant's back "gave way" while he was manually unloading a truck and that he experienced "a lot of pain" and "a feeling of being paralyzed" provided substantial evidence to support the conclusion of the Board and the referee that there was a causal connection between the claimant's employment and his disability. *Morgan v. Giant Markets, Inc., supra* at 423, 397 A.2d at 415-16. The Court also acknowledged, however, that it is up to the trier of fact to determine the credibility of the wit-

nesses as to the total situation. We must conclude that, in this case, based on the conflicting testimony produced at the hearing, the referee could properly conclude that no obvious causal connection had been established and that unequivocal medical testimony was required.

Finally, we must determine whether or not Dr. Ballestas' testimony that "80% of the possibility" was that the claimant's injury was work-related constitutes unequivocal evidence. The general rule in this regard is for this Court to determine if "the qualitative phrase does or does not qualify or modify the answer so as to make it equivocal," *Sellecchia v. Workmen's Compensation Appeal Board,* 44 Pa. Commonwealth Ct. 92, 94, 403 A.2d 190, 191 (1979); *Harrisburg Housing Authority v. Workmen's Compensation Appeal Board,* 14 Pa. Commonwealth Ct. 413, 422 A.2d 753 (1974), and such a determination must be drawn from the entirety of the physician's testimony. *See Martinique v. Workmen's Compensation Appeal Board,* 45 Pa. Commonwealth Ct. 67, 404 A.2d 778 (1979).

We must agree with the referee that Dr. Ballestas' testimony was not unequivocal. Not only did he testify that "80% of the possibility" was that the claimant's injury was work-related, but he also stated that "this *could be some* reason. This is *possible,* yes," and that "this is what we consider that the *more probable* reason of his injury." (Emphasis added.) We do not believe that such evidence, when viewed in its totality, constitutes unequivocal medical testimony.

> [T]he expert has to testify, not that the condition of claimant *might have,* or even *probably did* come from the accident, but that in his professional opinion, the result came from the cause alleged. A less direct expression falls below the required standard of proof and does not

constitute legally competent evidence. (Emphasis added.)

*Beaver Valley Builders Supply v. Workmen's Compensation Appeal Board*, 46 Pa. Commonwealth Ct. 344, 346, 406 A.2d 1172, 1173 (1979) (quoting *Menarde v. Philadelphia Transportation Co.*, 376 Pa. 497, 501, 103 A.2d 681, 684 (1954)); *Harrisburg Housing Authority v. Workmen's Compensation Appeal Board, supra.*

We will therefore reverse the order of the Board and affirm the referee's denial of benefits.

ORDER

AND Now, this 25th day of August, 1981, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby reversed.

Judge ROGERS dissents.