560 A.2d 306

**Lois C. MICHAELSON, Widow of Lawrence George Michaelson, Deceased, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (R.R. LEININGER & SON), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 22, 1988.

Decided June 22, 1989.

William J. Schaaf, James R. Fryling, Marsh, Spaeder, Baur, Spaeder & Schaaf, Erie, for petitioner.

Joseph J. May, Plate, Shapira, Hutzelman, Berlin, May, Walsh and Brabender, Erie, for respondents.

Before BARRY and SMITH, JJ., and NARICK, Senior Judge.

## OPINION

BARRY, Judge.

Lois C. Michaelson (claimant), widow of Lawrence George Michaelson (decedent), appeals from an order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's decision to deny her claim for dependency benefits.

Decedent suffered from pre-existing coronary artery disease. On July 15, 1982, he was hauling gravel in a semi-dump truck in the course of his employment with R.R. Leininger & Son (employer). His duties entailed driving the truck to Perry Dock in Erie, waiting while others loaded the gravel onto the truck, driving the truck to a stockpile maintained in East Springfield and then dumping the gravel. Since reporting to work at 7:30 a.m., he had made two round trips. He was on his third trip when, at approximately 3:00 p.m., he suffered a cardiac arrythmia while travelling through a stretch of U.S. Route 20 near Girard, where one of two eastbound lanes was being repaired. Consequently, he caused the truck to first strike two construction barrels and then strike the guardrail. At approximately 3:35 p.m., the decedent was found by paramedics sitting upright in the seat of the truck in ventricular fibrillation. He was taken to St. Vincent Health Center in Erie where he was pronounced dead that same day.

Following the death of her husband, claimant filed a fatal claim petition under Section 301(c)(1) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1). The matter was heard by a referee who, after considering the evidence presented by both parties, concluded that the decedent's death was not caused by his employment, that his working

conditions were not a substantial contributing factor in causing his death and, accordingly, claimant's petition should be denied. In doing so, he specifically found credible the testimony of the employer's medical witness. Claimant appealed the referee's decision to the Board which entered the above-mentioned order. This appeal followed.

 When no obvious causal connection exists between an employee's condition and a work injury, unequivocal medical evidence must be produced to establish that connection before the claimant is entitled to workmen's compensation benefits. *Fessler v. Workmen's Compensation Appeal Board (Nationwide Insurance Company)*, 86 Pa. Commonwealth Ct. 198, 484 A.2d 422 (1984). Where the issue in a workmen's compensation case is, as it is here, whether death was a product of a work-related injury, a pre-existing pathology, or both, the claimant must establish by unequivocal medical evidence that the decedent's work activities aggravated the pre-existing condition, thereby contributing to his death. *Modern Transfer v. Workmen's Compensation Appeal Board (Feiertag)*, 47 Pa. Commonwealth Ct. 592, 408 A.2d 900 (1979).

In this case, the referee found that there was no causal relationship between the decedent's death and his work activities. He made this finding based upon his acceptance of the deposition testimony of the employer's medical witness, Dr. Edward E. Janus.[1] The doctor was asked on direct examination if he had an opinion, based on a reasonable degree of medical certainty, about the relationship between the decedent's death and his employment activities. He responded: "No, I do not feel that his employment presented any risks for what happened to Mr. Michaelson." Dr. Janus, further stated that it was his "opinion" that working for the employer "had no effect on [the decedent's]

---

1. It is well settled that questions of credibility and weight of the evidence are for the referee, *Interstate Truck Service, Inc. v. Workmen's Compensation Appeal Board*, 42 Pa. Commonwealth Ct. 22, 400 A.2d 225 (1979), as are choices between conflicting testimony, *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board (Jakel)*, 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977).

outcome" and that he did not "feel" that the decedent's work activities aggravated his underlying disease.

On cross-examination, Dr. Janus gave the following testimony:

BY MR. SCHAAF:

. . . .

Q. Doctor, define for me a reasonable degree of medical certainty.

A. I would have to judge my opinion on the knowledge that I have received in regard to my education, and also in my practical knowledge that I've seen at the hospital in regard to patients with underlying disease entities.

Q. I don't quite follow that. You have testified now and answered a number of questions which were prefaced, "Do you have an opinion based upon a reasonable degree of medical certainty." I'd like to know your understanding of what that test is. What is a reasonable degree of medical certainty?

A. I don't have the exact legal definition for that entity, sir.

Q. Well, do you recall being asked a number of questions and asked if you have an opinion based upon a reasonable degree of medical certainty, am I correct?

A. Yes, I was.

Q. And you answered all those questions.

A. Yes, I have.

Q. But you don't seem to have an idea of what the definition of a reasonable degree of medical certainty is.

A. My definition, as I have mentioned before, was reading the journals, practical experience with patients, and seminars.

Q. That you are what, absolutely certain of this opinion?

A. No. No one can be absolutely certain of any opinion.

Q. What type of probability then are you giving me?

A. Eighty percent.

Q. So you're saying that with a reasonable degree of medical certainty, you mean eighty percent of the time your opinion would be right.

A. Yes.

Q. Likewise, I take it then, twenty percent of the time your opinion would be incorrect.

A. True.

(Deposition testimony of Dr. Janus, 9/20/85, pgs. 13–14.)

Claimant contends that Dr. Janus' testimony concerning the lack of causal connection between the decedent's death and his work activities is equivocal because (1) he stated that he did not "feel" that the decedent's employment presented any risk for what happened to him or that the decedent's work activities aggravated his underlying coronary artery disease and (2) he stated on cross-examination that an opinion based upon a reasonable degree of medical certainty constitutes an opinion having an eighty percent probability of being correct. She further argues that, because Dr. Janus' testimony regarding the relationship between the decedent's death and his work activities is equivocal, it was error for the referee to rely upon that testimony in denying the fatal claim petition.

■ A determination that certain medical testimony is equivocal is not a finding of fact; rather it is a conclusion of law that is reviewable by this Court. *Lewis v. Commonwealth*, 508 Pa. 360, 498 A.2d 800 (1985). In conducting such a review, the medical witness' entire testimony must be reviewed and taken as a whole and a final decision must not rest upon a few words taken out of the context of the entire testimony. *Id.*

■ In *Lyons Transportation Lines, Inc. v. Workmen's Compensation Appeal Board (Pogany)*, 84 Pa. Commonwealth Ct. 546, 480 A.2d 358 (1984), this Court held that testimony by the claimant's medical witness that it was his "feeling" that the fractured vertebra which claimant had sustained as the result of work-related trauma had aggravated a pre-existing malignancy, causing it to spread more

rapidly and thereby hastening the death of the claimant, was unequivocal. It was stated therein that " [an] opinion expressed as a feeling or 'I feel that way about it' is equivalent to saying 'I believe' and '[c]onsequently, [such an] answer is sufficiently definite.' " *Id.*, 84 Pa. Commonwealth Ct. at 551, n. 3, 480 A.2d at 361, n. 3 (citing *Swingle v. Mill Creek Coal Co.*, 116 Pa. Superior Ct. 97, 176 A. 828 (1935)). Consequently, Dr. Janus' use of the word "feel" in expressing his opinion does not render that opinion equivocal.

■ This Court has also stated, with regard to medical testimony offered to prove the existence of a causal connection between an employee's heart attack and his work activities, that such testimony need not be given with unqualified certainty. *Sears, Roebuck & Co. v. Workmen's Compensation Appeal Board (Moore)*, 48 Pa. Commonwealth Ct. 161, 409 A.2d 486 (1979). All that is required is that the medical expert testify with a reasonable degree of medical certainty. *Id.* This Court is of the opinion that, when a medical expert renders an opinion which, in his own view, has an eighty percent probability of being correct, he has rendered an opinion within a reasonable degree of medical certainty.

We do note that a physician whose testimony was determined to be equivocal in *Lehigh Valley Manpower Program v. Workmen's Compensation Appeal Board (Sanchez)*, 61 Pa. Commonwealth Ct. 430, 435, 433 A.2d 935, 938 (1981), had testified that "80% of the possibility" was that the claimant's injury was work-related. However, the same witness also stated that "this *could* be some reason. This is *possible*, yes," and that "this is what we consider that the more probable reason of his injury." It was the combination of both the latter statements and the former that led this Court to reach a conclusion of equivocality.

In the present case, a review of Dr. Janus' testimony in its entirety discloses no statements by him indicating that he was merely speculating as to the lack of a causal connection between the decedent's death and his work activ-

ities. He never stated, for example, that it was *possible* that the decedent's work activities did not aggravate his pre-existing coronary artery disease or that they *might* not have aggravated it.

It is, therefore, the conclusion of this Court that Dr. Janus' testimony constitutes substantial competent evidence supporting the referee's decision to deny dependency benefits to the claimant.

Accordingly, the order of the Board is affirmed.[2]

## ORDER

NOW, June 22, 1989, the order of the Workmen's Compensation Appeal Board, dated June 3, 1988, at No. A–91498, is affirmed.

---

2. We note that the referee, in his decision, also found that the opinion of the claimant's medical witness regarding the existence of the required causal connection had been made on the basis of a hypothetical question which required the assumption of facts which were not supported by the record. The claimant argues that the referee erred in making this finding. Because it is our conclusion that the referee's decision is supported by substantial competent evidence, we do not address this issue.