571 A.2d 1096

**John A. CAVALLO, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (BARNES & TUCKER COMPANY), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted Jan. 12, 1990.

Decided March 5, 1990.

24

Timothy P. Creany, Ebensburg, Pawlowski, Creany & Tulowitzki, for petitioner.

John J. Bagnato, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, for respondent, Barnes and Tucker Co.

Before DOYLE and McGINLEY, JJ., and BLATT, Senior Judge.

BLATT, Senior Judge.

John A. Cavallo (claimant) petitions for review of an order of the Workmen's Compensation Appeal Board (Board), which reversed a referee's decision finding him totally dis-

abled due to an occupationally acquired disease within the meaning of Section 108(n) of The Pennsylvania Workmen's Compensation Act (Act).[1]

The claimant worked in coal mines for 37 years, of which the last 18 or 19 were as an employee of the Barnes & Tucker Company (employer). He was exposed to a coal dust hazard throughout this period. On September 22, 1986, he filed a claim petition for workmen's compensation benefits alleging total disability, or in the alternative, partial disability, as a result of coal worker's pneumoconiosis. The claimant later amended his petition to indicate a claim for disability due to an occupationally acquired disease under Section 108(n) of the Act.

At the first hearing, the claimant testified personally and submitted the medical report of Robert F. Klemens, M.D. In his report, Dr. Klemens concluded that the claimant was totally and permanently disabled due to pneumoconiosis and a resultant pulmonary disability. The employer presented the medical report of Gordon A. Gress, M.D., who concluded that the claimant had no significant pneumoconiosis or occupationally-related pulmonary disease. The referee thereafter granted the employer's motion for the appointment of an impartial physician to resolve the conflict in medical evidence.

At the second hearing, Dr. Bernard P. McQuillan was present to testify as an impartial physician. Dr. McQuillan testified that his examination of the claimant included a review of the medical reports of record as well as a review of the claimant's occupational history, present illness, past history and symptoms. Dr. McQuillan also performed several tests on the claimant such as a physical examination, resting electrocardiogram, masters exercise test, hemoglobin, urinalysis, pulmonary function studies before and after bronchodilated, chest x-ray and arterial blood gas studies at rest. Based on his examination of the claimant and review of the medical reports of record, Dr. McQuillan concluded

1. Act of June 2, 1915, P.L. 736, *as amended,* added by Section 1 of the Act of October 17, 1972, P.L. 930, 77 P.S. § 27.1(n).

that the claimant had developed moderate obstructive pulmonary emphysema of a disabling degree.

The referee accepted the opinions of Dr. McQuillan and designated them as the medical basis of his decision. He thus found the claimant totally disabled because of obstructive pulmonary emphysema. On appeal, the Board reversed, holding that the referee committed an error of law in concluding that the claimant had met his burden of proof under Section 108(n) of the Act. It is from this decision and order that the claimant petitions for review.[2]

■ Our task is to determine whether the testimony of Dr. McQuillan constitutes sufficient evidence to sustain an award of benefits under Section 108(n) of the Act. Such a determination is a question of law fully reviewable by this Court.

■ Because emphysema is not one of the specifically enumerated occupational diseases under Section 108 of the Act, the claimant's proof must satisfy the three requirements of subsection (n):

The term "occupational disease," as used in this act, shall mean only the following diseases.

(n) All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population.

In reversing the referee, the Board concluded that the testimony of Dr. McQuillan was insufficient to satisfy the second and third elements of Section 108(n). We disagree.

■ In a case such as this, it is the purpose and function of the reviewing board and/or appellate court to review the referee's conclusions of law, while at the same

---

**2.** Our scope of review is limited to determining whether constitutional rights have been violated, errors of law committed, or whether findings of fact were unsupported by substantial evidence. *Nesman v. Workmen's Compensation Appeal Board (Welded Construction Co.),* 121 Pa.Commonwealth Ct. 90, 550 A.2d 583 (1988).

time ascertaining that the facts as found by the referee are supported by substantial evidence. *Lewis v. Workmen's Compensation Appeal Board,* 508 Pa. 360, 498 A.2d 800 (1985). Also, in a workmen's compensation case, where the Board took no additional evidence as here, the referee is the ultimate factfinder as to questions of credibility, conflicting medical evidence and the weight to be given the evidence. *Wilson v. International Peripheral Systems, Inc.,* 58 Pa. Commonwealth Ct. 38, 427 A.2d 293 (1981). And, having assessed the credibility of the evidence, the referee may exercise his discretion to accept or reject the testimony of any witness in whole or in part. *Id.* Finally, we are mindful that it is the obligation of this Court to construe the Act liberally so that its humanitarian purpose of protecting workers is realized. *Plasteel Products Corp. v. Workmen's Compensation Appeal Board,* 32 Pa.Commonwealth Ct. 405, 379 A.2d 908 (1977). Here, the referee made the following three pertinent findings of fact:

10. This Referee accepts the opinions of Dr. McQuillan. The opinions of this physician are the medical basis of this decision.

11. This Referee finds as a fact that the claimant is totally disabled because of obstructive pulmonary emphysema which has resulted in part as a result of his occupational exposure to coal dust. His disability began September 3, 1986.

12. Obstructive pulmonary emphysema is causally related to the claimant's occupation, and the incidence of this disease is substantially greater among workers in the coal mining industry than it is in the general population.

Referee's Decision (R.D.) of May 4, 1987 at 3, Reproduced Record (R.R.) at 94a. The referee concluded that the claimant had met his burden of proving that he is totally disabled because of an occupationally acquired disease within the meaning of Section 108(n) of the Act. R.D. at 3, R.R. at 94a.

There is no question that the claimant has met his burden with regard to the first element of Section 108(n) of the Act. The following testimony of Dr. McQuillan convinces us that the claimant also satisfied the second and third elements of Section 108(n).

On direct examination, Dr. McQuillan testified:

Q. Now, Doctor, what do you believe is the cause of Mr. Cavallo's Obstructive Pulmonary Emphysema?

A. I have a man who's had thirty five (35) years at [sic] dust exposure in the coal mines. I also have a man who smoke [sic] one (1) pack of cigarettes per day, he began smoking at age eighteen (18) years. He's done no smoking since 1972. He does have a significant smoking history, how be it remote, with no smoking since 1972. I personally feel, that both the cigarette smoking and his industrial exposure have both contributed to the development of his Obstructive Pulmonary Emphysema.

Q. Could you put any kind of a equation on that percentage wise?

A. I have no way to assess numbers to it, I think both are factors, but I think both are probably are [sic] fairly equal factors in the development of his Emphysema.

Q. One last question, do you consider his disability to be partial?

A. I think he's totally disabled in view of his consistently depressed Pulmonary Function Studies by all three (3) Examiners, added to his Arterial Oxygen Desaturation.

On redirect examination, Dr. McQuillan testified:

A. My feeling is that incidents of Obstructive Pulmonary Emphysema is [sic] definitely higher in people exposed to dust exposure as comparing [sic] to the general population.

. . . .

Q. As I understand than [sic], you do think that there is a significant increase but, percentagewise you can't quantify it?

A. That's correct.

In reviewing medical testimony, the expert's testimony must be examined in its entirety and a final decision as to its sufficiency should not rest upon a few words taken out of the context of the entire testimony. *Martinique v. Workmen's Compensation Appeal Board*, 45 Pa.Commonwealth Ct. 67, 404 A.2d 778 (1979). Moreover, when testifying about the comparative incidence of a disease under Section 108(n)(3), an expert witness is not required to parrot the statutory language by uttering the talismanic words "substantially greater." *Berry v. Workmen's Compensation Appeal Board (General Tire and Rubber Co.)*, 86 Pa.Commonwealth Ct. 95, 483 A.2d 1066 (1984). Nor must an expert witness use any magic words when testifying about the causal relationship between an occupational disease and an industry or occupation. *Yanish v. Workmen's Compensation Appeal Board (Bethlehem Mines Corp.)*, 96 Pa.Commonwealth Ct. 545, 507 A.2d 1302 (1986). All that is necessary is that the occupational disease be a substantial contributing factor in disabling the claimant from his coal mining employment. *Id.* We believe that Dr. McQuillan's testimony constitutes substantial evidence in support of the referee's finding that obstructive pulmonary emphysema is causally related to the claimant's occupation, and the incidence of this disease is substantially greater among workers in the coal mining industry than it is in the general population. We thus hold that the claimant has satisfied all of the requirements of Section 108(n) of the Act.

Accordingly, we will reverse the order of the Board.

ORDER

AND NOW, this 5th day of March, 1990, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby reversed.