636 A.2d 246

**BROOKS DRUG, INC., Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (PATRICK), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 22, 1993.

Decided Dec. 30, 1993.

Richard E. Bordonaro, for petitioner.

Tamea Ochs Rothschild, for respondent.

Before DOYLE and FRIEDMAN, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Brooks Drug, Inc. (Employer) petitions for review from the order of the Workmen's Compensation Appeal Board (the Board) which affirmed the referee's decision granting benefits to Kevin J. Patrick (Claimant). We affirm.

Claimant worked as a manager at the Eckerd Drug Store in Titusville, Pennsylvania, from 1984 until April 7, 1987. Claimant's duties included unloading trucks, stocking shelves, setting up displays, operating the cash registers and maintaining records. During his first six months at the Titusville store, Claimant's work was more strenuous than would ordinarily be required, as he was faced with an accumulation of three years of stock. Claimant testified that he regularly lifted between twenty and thirty pounds approximately five hundred times

per week, and that his duties required constant lifting and bending.

In May of 1986, Claimant experienced tingling in his left foot. After mentioning these symptoms to a doctor in August, 1986,[1] Claimant was referred to William Fritz, M.D., an orthopedic surgeon. He did not see Dr. Fritz until January of 1987. At this point Claimant's symptoms had worsened such that his pain prevented him from performing his work. Dr. Fritz diagnosed Claimant as having L–5 S–1 disc herniation and recommended that Claimant undergo surgery.

In a conversation that same month, Claimant notified his supervisor, Ed Gottron, that he was having problems and would require surgery. Claimant requested a leave of absence in February of 1987. The record indicates that Claimant was asked to delay his surgery until business slowed, and Claimant finally took a leave of absence in April.

Claimant has been totally disabled and has not worked since his April 8, 1987 surgery. Claimant filed a claim petition on February 6, 1989, alleging a work-related injury in May 1986, and seeking compensation benefits for the period from April 7, 1987 to the present. In its answer, Employer denied that Claimant's injury was work related, and alleged that Claimant failed to provide notice of the injury within 120 days as required by Section 311 of The Pennsylvania Workmen's Compensation Act (Act).[2]

Section 311 of the Act provides that:
Unless the employer shall have knowledge of the occurrence of the injury, ... within twenty-one days ..., no compensation shall be due until such notice be given, and unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases ... (where) the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reason-

1. Claimant's visit was unrelated to his work-related injury.
2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 631.

able diligence should know, of the existence of the injury and its possible relationship to his employment.

The referee bifurcated the case for decisional purposes on the issues of notice and liability. On October 17, 1989, the referee entered an interlocutory order, finding that Claimant knew or should have known that he suffered a work-related injury in May 1986. However, the referee denied Employer's notice argument in order to permit Claimant to prove that he had a progressive injury, which, if established, would extend the injury date beyond May 1986.

During the hearings, Claimant gave conflicting testimony as to when he first realized his symptoms were work related. Claimant first testified that he initially believed he had a circulation problem. He later stated that he thought his pain was associated with work "right from the beginning", in May of 1986, but that he did not tell anyone because he wanted his job. Claimant testified that he first began experiencing pain in July or August of 1986, and that the pain was constant, with no particular cause. Claimant alleged that he was not aware of the relationship between his work and his condition until he was so advised by Dr. Fritz in January 1987.

Claimant testified that, after his visit to Dr. Fritz, he spoke to Ed Gottron about his back problem and told him that it was caused by lifting and bending.

Dr. Fritz testified that Claimant suffered a L-5 S-1 disc herniation with S-1 nerve root impingement. Dr. Fritz stated that, while he could not determine the exact cause of the herniated disc, Claimant's condition was at least exacerbated by his work activity.

Employer submitted the deposition testimony of Leonard Green, M.D., who testified that degenerative disc disease is a natural process that all of us develop as we get older. Dr. Green concurred with Dr. Fritz's diagnosis that Claimant had suffered a herniated disc, but believed that the disc herniated during the course of its natural progression. While Dr. Green opined that the condition of lumbar disc disease was not causally related to Claimant's work activity, he admitted that

continued lifting could cause further damage in terms of progression of the disc material.

The referee made the following pertinent findings of fact:

5. Claimant first gave notice of his work injury to his supervisor, Ed Gottron, of his problems from his work injury in January 1987. (April 27, 1989 nt, p 15 and p 24). That notice was more than 120 days after the claimant's injury in May 1986.

. . . .

11. Dr. Green's opinion regarding the causation of claimant's herniated disc is not credited. Dr. Green's opinion contradicts itself in several places. . . . The opinion of Dr. Fritz is found credible that the claimant's work activities substantially contributed to the development of the herniated discs that led to the claimant's surgery.

12. Claimant suffered an initial work injury in May 1986, and, thereafter, suffered a repetitive or progressive injury on each subsequent work day because of the heavy lifting which the claimant performed. These repetitive injuries continued until April 1987.

(R.R. pp. 129a–131a.)

The referee concluded that Claimant succeeded in meeting his burden of proving that his disability in the form of a herniated disc was the result of a work injury, and that Claimant gave timely notice, within 120 days of a repetitive and progressive injury suffered at work. The Board affirmed the referee's decision.

On appeal to this court,[3] Employer alleges that the Board erred in affirming the referee's findings that Claimant suffered a progressive injury of which Claimant provided proper

---

**3.** Our scope of review in a workmen's compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

notice, and in affirming the decision that Employer was not entitled to credit for disability benefits received by Claimant.

■ Employer asserts that Claimant failed to establish an aggravation of his injury by unequivocal medical testimony. A determination that certain medical testimony is equivocal is a conclusion of law, reviewable by this court. *Lewis v. Commonwealth*, 508 Pa. 360, 498 A.2d 800 (1985). Dr. Fritz testified that it was difficult to identify the specific cause of the disc herniation, but that the deterioration of the disc got progressively worse over time. He further stated that "it appears as though [the condition] was at least exacerbated by [Claimant's] work activity." (R.R. p. 87a.)

■ Medical testimony need not be given with unqualified certainty. *Michaelson v. Workmen's Compensation Appeal Board (R.R. Leininger & Son)*, 126 Pa.Commonwealth Ct. 542, 560 A.2d 306 (1989). So long as the witness does not recant his initial opinion, his testimony, if accepted by the fact finder, is competent evidence to support an award of benefits. *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 77 Pa.Commonwealth Ct. 202, 465 A.2d 132 (1983). The referee found the opinion of Dr. Fritz credible. As the referee's finding that Claimant suffered a repetitive injury is supported by substantial competent evidence, it will not be disturbed on appeal. Once a claimant has established an aggravation, or progressive injury, the date of injury must be determined for purposes of notice under Section 311. Employer relies on *Bolitch v. Workmen's Compensation Appeal Board*, 132 Pa.Commonwealth Ct. 110, 572 A.2d 39 (1990), for its argument that Claimant's notice was not timely. In *Bolitch*, the claimant failed to produce expert testimony to support a finding of continual aggravation, and the court affirmed a denial of benefits based upon lack of proper notice.[4] In this case, however, the referee found that

---

4. Employer notes that the court in *Bolitch* also stated, "Most important, claimant in this case did not give employer timely notice of the May 1, 1986 injury." *Id.* 132 Pa.Commonwealth Ct. at 117, 572 A.2d at 43. However, the line of cases which address the issue of continued aggravation indicates that such aggravation negates the requirement to

the testimony of Dr. Fritz did support such a finding, and the Board correctly agreed. Each day of work constituted a "new" injury in that it further aggravated Claimant's condition. *Mancini's Bakery v. Workmen's Compensation Appeal Board (Leone)*, 155 Pa.Commonwealth Ct. 641, 625 A.2d 1308 (1993). The date of injury for purposes of Section 311 is, therefore, the last day Claimant worked.

The referee found that Claimant notified Employer of his work-related injury in January, 1987. As Claimant continued to work until April, 1987, there is no question that notice was timely.

 Finally, Employer asserts that the Board erred in affirming the referee's decision which did not find Employer entitled to a credit for disability payments previously paid to Claimant. Claimant admitted that he had received disability payments under Employer's disability plan. Neither the referee nor the Board specifically addressed the question of whether Employer is entitled to a credit for these payments. A credit is available where payments are made by an employer or its insurer, for an injury arising in the course of employment, where the payments are not wages for employment. *Humphrey v. Workmen's Compensation Appeal Board (Supermarket Service)*, 100 Pa.Commonwealth Ct. 33, 514 A.2d 246 (1986). The record lacks sufficient information for this Court to rule on this question. We, therefore, remand the case for the limited purpose of determining whether Employer is entitled to a credit for these payments.

Accordingly, the order of the Board affirming the referee's award of benefits is affirmed, and the case is remanded for a determination of whether Employer is entitled to credit for benefits previously paid.

give notice of what may be termed the "initial" injury or condition. In the "aggravation" cases, the inquiry focuses on when the aggravation occurred, rather than when a claimant knows or should know of an injury aggravated by his work. *Mancini's Bakery v. Workmen's Compensation Appeal Board (Leone)*, 155 Pa.Commonwealth Ct. 641, 625 A.2d 1308 (1993).

## ORDER

NOW, December 30, 1993, the order of the Workmen's Compensation Appeal Board, at A91–2315, dated May 11, 1993, affirming the award of benefits is affirmed, and the case is remanded for a determination of whether Employer is entitled to credit for benefits previously paid.

Jurisdiction relinquished.

FRIEDMAN, J., concurs in result only.