**Robert CURRAN, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (MAXWELL INDUSTRIES), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 14, 1995.

Decided Aug. 28, 1995.

Reargument Denied Oct. 10, 1995.

---

John J. Stanzione and Edward C. Sweeney, for petitioner.

Marshall A. Haislup, III, for respondent.

Before DOYLE and NEWMAN, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Robert Curran (Claimant)[1] petitions for review of an order of the Workmen's Compensation Appeal Board (Board) which affirmed as modified a referee's decision that Claimant suffered a work-related injury but determined that American Reliance Insurance Company (American) was not liable for Claimant's compensation.

Claimant became employed with Maxwell Industries (Employer) in February of 1986. In June of 1986, Claimant was diagnosed with bronchitis, emphysema and chronic obstructive pulmonary disease. Claimant was transferred to a position in Employer's painting shop in October of 1987 and continued to work through June 6, 1988.

---

1. By order dated July 26, 1995, the Court ordered that the record reflect the death of Claimant on March 13, 1993 and that the appeal shall continue in his name until a personal representative is appointed.

Claimant filed a claim petition alleging that he became totally disabled as the result of inhaling fumes at work from February, 1986 to June, 1988. Referee Perna held hearings on Claimant's petition and the case was closed on January 8, 1990.[2] The referee's decision included the following pertinent Findings of Fact:

2. In October, 1987, Claimant was transferred from his position in the electrical shop to a new position within the painting shop of Defendant.

3. Claimant performed his painting duties within a paint booth located in the main shop of Maxwell Industries' building. Other activities performed within the main shop included welding and various fumes from the welding permeated the main shop.

4. Ventilation within the main shop was limited to a three foot fan in the ceiling of the paint booth which only opened ¼ of an inch; two twenty inch fans on the floor of the shop; and two three foot high velocity fans, one of which did not work.

. . . .

6. Claimant experienced a severe exacerbation of his breathing difficulties in October of 1987 when he was transferred to duties in the paint booth.

7. Claimant's breathing was difficult and his chest became tight as a result of his inhalation of welding fumes and paint fumes beginning October of 1987.

8. Beginning in October, 1987, Claimant began spitting up red paint on and off during various work days.

9. Claimant was hospitalized in the Emergency Room of Ephrata Hospital in December, 1987, for shortness of breath.

10. On 1–29–88, Claimant, while painting at work, began to cough up paint colored mucus. . . . Claimant was diagnosed again with acute and chronic bronchitis and COPD and was referred to a pulmonary specialist, Dr. Eugene C.H. Ko.

11. Claimant continued to work until 6–6–89. On that day, Claimant was spitting up paint throughout the day and when he returned home that evening.

12. On 6–7–89, Claimant experienced a severe burning sensation in his stomach. Claimant continued to spit up a lot of red paint. Claimant went to see Dr. Galanis who admitted him to Brandywine Hospital.

13. Claimant was hospitalized five times subsequent to the 6–7–89 hospitalization as a result of shortness of breath, burning sensations and chest pain.

14. Claimant was diagnosed with acute and chronic pulmonary disorder which includes respiratory insufficiency, shortness of breath and acute bronchospasm.

15. The Claimant's duties at Maxwell Industries, beginning in 1987, which resulted in his inhaling welding and paint fumes, aggravated and exacerbated his pre-existing lung disease.

16. The Claimant's daily exposure to such fumes was a continual aggravation of his pre-existing condition.

17. The Claimant is disabled from returning to his job with Defendant.

18. The Claimant's pre-existing diseases were of a degenerative nature and were progressive, Claimant's exposure to the industrial hazards at Maxwell Industries accelerated the natural progression of these diseases and worsened his condition.

19. Claimant's earnings at the time of the injuries experienced in October, 1987 and continuing therefrom was $330.00 per week.

20. American Reliance Insurance Co. was the Workers' Compensation Carrier for Defendant from October, 1987 up to and including 3–31–88.

(Referee's Decision, June 27, 1990.)

The referee also set forth the following Conclusions of Law:

(N.T. November 2, 1989 p. 4.) Referee Perna continued proceedings to determine whether or not American was liable and stated that, should he find that Claimant's injury occurred after coverage had been cancelled, "all I will find is that [American] is not liable". (N.T. 7–8.)

1. Claimant has established that his exposure to welding and paint fumes while in the course and scope of his employment with Defendant aggravated his pre-existing bronchitis, emphysema and chronic obstructive pulmonary disease (COPD).

2. Claimant has established that such aggravation began on or about 10–1–87 and continued on a daily basis thereafter up to and including Claimant's last day of employment on 6–6–88.

3. Such exposure from October, 1987 to 6–6–88 was a recurring daily aggravation of his pre-existing condition and resulted in his inability to return to work as of 6–7–88.

4. From the time of Claimant's initial exposure to the paint and welding fumes in October, 1987 and continuing up to and including 3–31–88, American Reliance Insurance Co. was the Workmen's Comp. Insurance Carrier for Defendant.

5. Claimant has established that his exposure during this period of time was a continuous aggravation of his previous disabilities such that he was disabled from returning to work as of 6–7–88.

*Id.*

Although the referee concluded that Claimant proved a work-related injury resulting in disability, he dismissed the claim petition after finding that Claimant failed to give notice to Employer.

Claimant and American appealed to the Board. Claimant argued that notice had been established, and American argued, inter alia, that the referee erred in not ordering the carrier out of the case. The Board sustained Claimant's appeal, finding that notice had been properly provided, and remanded the case for an award of benefits. The Board's order stated that, in assessing liability, the referee was bound by his previous findings of fact as to the date of injury.

After remand, Referee Nyce issued a decision adopting the findings and conclusions issued by Referee Perna, changing only the findings and conclusions relating to the issue

of notice, and ordering Employer and/or its insurance carrier to pay compensation for total disability, medical bills and litigation costs. (Referee's Decision, April 30, 1992.)

American appealed to the Board, asserting that, although the referee failed to find a specific injury date, the evidence establishes the date of injury as June 6, 1988, Claimant's last day of work. As it no longer provided coverage to Employer on that date, American argued that it was not liable to pay compensation. The Board agreed. The Board affirmed the award of benefits and Employer's liability, but reasoned that the referee correctly determined the date of injury to be June 7, 1988,[3] and that, since American did not provide coverage on that date, American is not liable for compensation.

On appeal to this Court, Claimant argues that the Board erred (1) in applying the "last moment of exposure" rule to this case and (2) in disturbing the findings and conclusions of the referee that Claimant suffered a compensable injury at a time when American was on the risk. American responds that the Board properly determined that Claimant's injury occurred at a time when American did not provide coverage.

American correctly points out that neither referee fixed a specific date of injury. Rather, the findings and conclusions reflect that Claimant suffered a continual aggravation of his underlying disease on a daily basis from October, 1987 through June 6, 1988.

Thus, we must determine whether the aggravation which occurred from October, 1987 through March 31, 1988, the last date of American's coverage, is sufficient as a matter of law to establish American's liability for Claimant's compensation, or whether Claimant is left without a remedy because his last day of exposure to fumes at work occurred on a date when Employer was without coverage.

An injury is compensable when it develops over a period of time and results from a number of work activities in which the employee engaged. *Workmen's Compensa-*

3. In *its decision*, the Board states that Claimant's last day of work was June 7, 1988. However, the record reflects, and the referee found, that Claimant last worked on June 6. We note that this inconsistency has no impact on our decision.

tion *Appeal Board and Young v. Bethlehem Steel Corp.*, 23 Pa.Commonwealth Ct. 454, 352 A.2d 571 (1976). In *Pawlosky v. Workmen's Compensation Appeal Board (Latrobe Brewing Co.)*, 514 Pa. 450, 525 A.2d 1204 (1987), the court held that the work-place aggravation or acceleration of a pre-existing disease constituted an injury within the meaning of Section 301(c)(1) of the Workers' Compensation Act (Act)[4]. Under workers' compensation law, an "aggravation" is regarded as a new injury for which the employer or insurer at the time the aggravation occurred is responsible for compensation. *Zinc Corp. of America v. Workmen's Compensation Appeal Board (Byers)*, 145 Pa.Commonwealth Ct. 221, 603 A.2d 218, *petition for allowance of appeal denied*, 531 Pa. 659, 613 A.2d 563 (1992).

■ In cases involving cumulative trauma and/or aggravation injuries, determinations of the date of injury depend largely on the facts of each case, the purpose for which the injury date must be established, and the medical evidence presented. *See USair, Inc. v. Workmen's Compensation Appeal Board (Schwarz)*, 160 Pa.Commonwealth Ct. 100, 634 A.2d 714 (1993); for additional examples, see Concurring Opinion, McGinley, J.

■ When notice is at issue,[5] the courts have held that, where disability results from aggravation, each aggravation constitutes a new injury, so that notice within 120 days of the last injury (usually the last day of work) satisfies the Act's notice requirement. *Man-*

*cini's Bakery v. Workmen's Compensation Appeal Board (Leone)*, 155 Pa.Commonwealth Ct. 641, 625 A.2d 1308 (1993). Similarly, the filing of a claim petition within three years of the last injury may satisfy the requirement of Section 315 of the Act, 77 P.S. § 602. *Id.* But *see Brooks v. Workmen's Compensation Appeal Board (Anchor Glass Container)*, 155 Pa.Commonwealth Ct. 248, 624 A.2d 821, *petition for allowance of appeal denied*, 536 Pa. 631, 637 A.2d 291 (1993).[6] In accord with the remedial purpose of the Act, where disability results from aggravation, i.e., numerous injuries, the courts generally have upheld the use of the date of the last injury for purposes of notice and filing limitations. *Brooks Drug v. Workmen's Compensation Appeal Board (Patrick)*, 161 Pa.Commonwealth Ct. 81, 636 A.2d 246 (1993). In essence, "aggravation negates the requirement to give notice of what may be termed the 'initial' injury or condition". *Id.* at 87–8 n. 4, 636 A.2d at 247 n. 4.

■ Similarly, an artificial determination of the injury date must be made by the courts where the issue is one of liability between two employers or insurance carriers. Where disability results from an aggravation, as opposed to a recurrence, of the underlying condition and the referee does not fix a precise injury date, liability is generally imposed on the employer/carrier providing coverage on the date of the last injury.[7]

■ Other than the "knows or should know" language in Section 311, the Act does

---

4. Act of June 2, 1915, P.L. 736 *as amended,* 77 P.S. § 411(1).

5. Section 311 of the Act, 77 P.S. § 631, requires that notice of an injury be given to an employer within 120 days from the date on which the claimant knows, or should know, of the relationship of the injury to the employment.

6. In *Brooks,* the referee found that the cumulative effect of work related circumstances resulted in an injury as of the time the claimant was diagnosed with a work-related injury (carpal tunnel syndrome), rather than his last day of work. In that case the claimant's petition was dismissed as untimely filed, even though the claimant continued to work and his condition continued to worsen. This decision reflects the importance of medical testimony in cases where dis-

ability results from work related events occurring over time.

7. Note that a strict policy fixing the last day of work as the date of injury may produce an arbitrary result. An insurer may be held liable for compensation where its coverage is provided only briefly and follows a long period of time during which the claimant suffers a daily aggravation of a pre-existing condition. A move toward allocating liability may be evidenced by the decision in *National Underground Storage and Continental Ins. Co. v. Workmen's Compensation Appeal Board (Durochia)*, 658 A.2d 1389 (Pa. Comwlth.1995), where the court held that each allergic reaction due to exposure resulted in a separate injury and held each of three carriers responsible for medical expenses incurred during their respective periods of coverage.

not define "injury date", so that, where disability results from aggravation over a course of time, the referee, as fact finder, may rely on medical evidence for this determination. *Brooks.* The courts have upheld the referee's decision where it is based on substantial evidence, regardless of whether the referee chooses the last day the claimant is injured, *Mancini,* or an earlier date, even though aggravation continued. *Brooks.*

In this case, the referee did not determine the only date of injury to be June 6, 1988. Instead, the referee found that: Claimant experienced a severe exacerbation of his condition in October of 1987; Claimant's duties, beginning in October of 1987, aggravated and exacerbated his pre-existing disease; and that Claimant's daily exposure was a continual aggravation of his pre-existing disease. The referee issued a finding with regard to Claimant's earnings "at the time of the injuries experienced in October, 1987" and concluded that Claimant's exposure from October 1987 through March 1988 was a continuous aggravation which resulted in Claimant's total disability.

■ As each aggravation constitutes a new injury, reliance on the date of the last injury to resolve questions of notice and limitation reflects the courts' reluctance to leave a claimant without a remedy once an injury and the relationship to employment are established. *See also Insurance Company of North America v. Workmen's Compensation Appeal Board (Dettenmeyer),* 504 Pa. 589, 475 A.2d 1323 (1984) (limiting "last moment of exposure" rule in occupational disease cases to situations where liable employer has had successive carriers, and holding that expiration of insurance policy before disease caused total disability does not discharge existing obligation of carrier). We believe that the remedial purpose of the Act is best effected *in this case* by acknowledging that each day of employment constituted a new

injury and by upholding the referee's determination that the injuries sustained from October 1987 through March 31, 1988, while American's coverage was in effect, were a substantial contributing factor to Claimant's ultimate disability.[8]

Accordingly, we reverse that part of the Board's order dismissing American from the case and order American to pay Claimant's compensation as per the terms of the award.

## ORDER

NOW, August 28, 1995, the Workmen's Compensation Appeal Board order, dated February 7, 1995, at No. A92–1336, dismissing American Reliance Insurance Company from the case, is reversed in part and it is ordered that American Reliance Insurance Company shall pay Claimant's compensation as per the terms of the award; the Board's order is affirmed in all other respects.

---

8. The "substantial contributing factor" test is used to determine whether an injury has occurred under Section 301(c) of the Act. *Chicoine v. Workmen's Compensation Appeal Board (Transit Management Services),* 159 Pa.Commonwealth Ct. 362, 633 A.2d 658 (1993). Although the referee did not use these words, his Findings of Fact and Conclusions of Law indicate that the referee had determined that Claimant's exposure from October of 1987 through March of 1988 was a substantial contributing factor resulting in his disability. Note, in Conclusion of Law 5, the referee's reference to exposure "during this period of time", where the dates set forth in the previous conclusion are from October of 1987 through March 31, 1988.