IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Phillips Enterprise, Inc., : 
              Petitioner : 
  : 
            v. : No. 152 C.D. 2017
  : Submitted: July 7, 2017
Workers' Compensation Appeal : 
Board (Constrisciani), : 
            Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge (P.)
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT               FILED: November 8, 2017

       Phillips Enterprise, Incorporated (Employer) petitions for review of the adjudication of the Workers' Compensation Appeal Board (Board) that granted the claim petition of Andrew Constrisciani (Claimant). In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ). Employer contends that the WCJ disregarded substantial, competent evidence, relied upon an incompetent expert medical opinion, and did not issue a reasoned decision. Discerning no merit to these claims of error, we affirm the Board.

       On February 4, 2015, Claimant filed a claim petition alleging that he suffered a work-related injury when a pipe fell on his head at Employer's construction site on June 25, 2014. Employer filed an answer denying the material allegations of Claimant's petition, and the matter was assigned to a WCJ.

       Before the WCJ, Claimant testified that he did construction work for Employer, which included, *inter alia*, installing dry wall, ceilings and concrete work. He worked 40 to 54 hours a week. He explained that on June 25, 2014, he and a co-

worker were unloading corrugated plastic pipe from a truck when a pipe fell on Claimant's head. Claimant was wearing a hard hat. Claimant testified that he immediately felt a burning, "[l]ike a torch[,]" on the back of his neck. Notes of Testimony (N.T.), 3/4/2015, at 13; Reproduced Record at 67a (R.R. __). He reported the incident to William Phillips, Employer's vice-president, and worked the remainder of his shift.

In July of 2014, Claimant saw his primary physician for persistent neck pain, for which he was prescribed steroids. Claimant continued to have pain in his neck, which caused him to have difficulty sleeping. Nevertheless, Claimant worked until January 2015, when he was laid off by Employer. Because Claimant continued to experience pain in his neck, Claimant met with an orthopedic surgeon, Dr. Richard Levenberg, who referred him to another specialist that treated him with epidural injections. Claimant acknowledged that he had "a little arthritis" in his neck before the incident at work. N.T., 3/4/2015, at 23; R.R. 77a.

Claimant introduced the deposition testimony of Gerald E. Dworkin, D.O., who focuses on acute and persistent pain of the spine and neck. On referral from Dr. Levenberg, Dr. Dworkin saw Claimant for his neck pain on January 15, 2015. Claimant explained to Dr. Dworkin that he was moving large 20-foot-long corrugated pipes, 18 inches in circumference, from a truck when one pipe struck him on the head. This caused a severe burning in the base of his neck as well as arm pain. Dworkin Deposition at 11; R.R. 100a.

Dr. Dworkin did a physical evaluation and reviewed a July 10, 2014, magnetic resonance imaging (MRI) of Claimant's cervical spine. The MRI showed that Claimant "had two segments of significant injury, one at C5-6, which demonstrated a disc herniation extending more to the left than the right at the

2

foramina, and he had another significant disc bulge, post-traumatic disc bulge, with some component of spondylosis, which created foraminal narrowing on the right side at C6-7." *Id.* at 14; R.R. 103a.

Dr. Dworkin diagnosed Claimant with "cervical radiculopathy on clinical exam, and secondary to two-level disc injuries at C5-6 with disc herniation and C5-6 with post-traumatic disc bulging and foraminal narrowing." *Id.*; R.R. 103a. He opined that these conditions were "caused by the trauma that occurred when the large pipes smacked him in the head in June of 2014." *Id.* at 15; R.R. 104a. In so opining, Dr. Dworkin noted that Dr. Levenberg's records "were compatible with [his] findings, a severe axial trauma to the top of his head and cervical spine." *Id.*; R.R. 104a. Dr. Levenberg also opined that Claimant's injuries were "traumatic disc herniations at C5-6 and C6-7." *Id.* at 16; R.R. 105a.

Dr. Dworkin testified about an EMG/nerve conduction study he did on April 9, 2015. He sampled both Claimant's right and left sides in multiple muscles and found an abnormality in the right bicep muscle. It "showed abnormal spontaneous activity indicating radiculopathy and some form of nerve injury at the C5-6 nerve roots, and the corresponding abnormalities in the muscles of the neck, again, indicating that the site of injury was within the spine itself." *Id.* at 20; R.R. 109a.

On cross-examination, Dr. Dworkin stated that he had not reviewed the medical records from Claimant's primary care physicians. He first attributed Claimant's trauma to lifting the piping but later concluded that Claimant's injury was caused by the pipe falling on Claimant's head because the "C5-6 segment has injury consistent with focal trauma in that the contour change in the disc is abnormal or protruding or herniated in an asymmetric manner, which indicates that there was

3

some sort of acute force causing the trauma, the herniation, and it extends into the foramina." *Id.* at 29; R.R. 118a. Dr. Dworkin further explained that the abnormal disc bulge at C6-7 was consistent with an acute injury. When asked if it was possible that these disc bulges could be degenerative in nature, Dr. Dworkin stated:

> *the C5-6 injury is a recent acute injury, with no underlying pre-trauma abnormalities*. The C6-7 level does indicate that there is disc bulging, but that there is some spondylosis or extra bone that is associated with it, so there may have been some degree of spondylosis or arthritis in that segment. It is possible that he had some underlying arthritic changes there, which would be normal for a 50-year-old gentleman, especially with his line of work, but he was asymptomatic prior to being hit on the top of the head, so that would indicate that there may have been some aggravation of that spondylosis.

*Id*. at 29-30; R.R. 118a-19a (emphasis added). When questioned about whether his opinion would change if Claimant's description of the work injury was false, Dr. Dworkin testified that Claimant had

> unequivocal abnormalities at two different spine levels thought by Dr. Levenberg to be herniations. I agreed with that. *These are abnormalities that have been caused by something, and if it is found that he was not struck on the top of his head, I would be somewhat hard-pressed to come up with a reason* for their existence.

*Id.* at 32; R.R. 121a (emphasis added).

In response to Claimant's case, Employer presented the testimony of Jim Phillips, who is the president and sole owner of Employer. Phillips testified that he first learned about Claimant's alleged injury four weeks after Claimant was laid off. William Phillips, who is Employer's vice-president and a union operator, also testified. He explained that he was at the job site on June 25, 2014, operating a

4

backhoe. Claimant did not tell him that he was hurt that day. William Phillips did not learn about Claimant's injury until April of 2015.

Employer introduced the deposition testimony of its expert, Dennis P. McHugh, D.O., who is board-certified in orthopedic surgery. On April 13, 2015, he did an independent medical examination of Claimant. Claimant told him that on June 25, 2014, he injured his neck when moving a plastic pipe from the back of a truck, which hit him on the head. Claimant stated that he had instantaneous neck pain, as well as pain that radiated into his shoulder blades and into his arms. Nevertheless, Claimant continued to work full time for several months thereafter.

Dr. McHugh diagnosed Claimant as "symptomatic with the cervical herniations or cervical spine at the C5-6 and C6 level with the discs." McHugh Deposition at 15; R.R. 189a. As to causation, Dr. McHugh testified that "more documentation was necessary to determine within a reasonable degree of medical certainty the etiology or cause of the cervical pathology …." *Id.*; R.R. 189a.

Subsequently, Dr. McHugh received copies of the records from Claimant's treating physicians. He noted that for three years, Claimant was being treated for cervical spine and neck pain. Regarding causation, Dr. McHugh testified as follows:

> From what I can see, [Claimant] had a work incident. He then went to see his family's physician about a week later. He doesn't describe the work injury. He just states that his neck has been bothering him and hurting him. At that point in time, it also needs to be clarified that [Claimant] had been seeing that same family doctor for approximately three years with the same type of complaints being treated with X rays, medications, [and] therapy programs.
>
> So first and foremost, I guess, there clearly is a preexisting pathology. *There's preexisting pathology that is symptomatic.* There's a preexisting pathology that was symptomatic enough

5

that his family doctor treated him and treated him for three years, *and when this alleged work incident occurred, the first medical provider that he sees, he doesn't give that as his history.* He then continues to work for approximately 6 months before he starts to seek medical attention for that.

*In my professional opinion as an orthopedic surgeon, that would raise concerns as to causation.*

*Id.* at 22; R.R. 196a (emphasis added).

On cross-examination, Dr. McHugh acknowledged that being hit in the head with a pipe could cause disc herniation. He also acknowledged that a herniation can enlarge following an acute trauma and that a trauma can aggravate degenerative disc disease.

On rebuttal, Claimant elaborated on the mechanism of injury. Claimant also testified that he had been treating with Drs. Traverso and Bassilios because of arthritis in his neck.

The WCJ granted the claim petition. In her decision, the WCJ found the testimony of Claimant and Dr. Dworkin credible. The WCJ set forth her reasons for finding the testimony of Dr. Dworkin more credible and persuasive than that of Dr. McHugh, explaining:

> *Dr. Dworkin is and has been [] Claimant's treating physician in contrast to Dr. McHugh as an evaluating physician for [Employer], because Dr. Dworkin has a greater familiarity with [] Claimant's conditions than Dr. McHugh* on the basis of Dr. Dworkin's several evaluations of [] Claimant's conditions on several dates in contrast to Dr. McHugh's evaluation of [] Claimant on 1 date, because the results of the diagnostic tests of [] Claimant and particularly the Magnetic Resonance Imaging (MRI) and electromyogram (EMG)/nerve conduction study (NCS) support Dr. Dworkin's opinions about the diagnoses, because Dr. Dworkin gave rational [] explanations about the causation of the diagnoses conditions and particularly with respect to the physical characteristics of the disc conditions, and

6

because Dr. McHugh didn't credibly refute Dr. Dworkin's testimony about the causation of the disc conditions on the basis of the physical characteristics of the disc conditions.

WCJ Decision, 2/1/2016, at 3, Finding of Fact (F.F.) No. 2 (emphasis added).

Employer appealed to the Board. It asserted that the WCJ did not issue a reasoned decision and that the decision was not based on competent substantial evidence. The Board affirmed the decision of the WCJ. Thereafter, Employer petitioned for this Court's review.

On appeal,[1] Employer raises several issues.[2] First, it contends that the WCJ did not issue a reasoned decision. Second, it contends that the WCJ's findings of fact are not supported by substantial evidence. Third, it contends that the WCJ's findings of fact are based upon incompetent evidence. Fourth, it contends that the WCJ capriciously disregarded evidence. Fifth, it contends that the WCJ's decision offends public policy. We consider these issues *seriatim*.

### Reasoned Decision

Employer contends that the WCJ did not issue a reasoned decision. It follows, therefore, that Claimant did not establish a work-related injury.

Section 422(a) of the Workers' Compensation Act (Act)[3] states that all parties are "entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and

---

[1] Our review determines "whether there has been a violation of constitutional rights, errors of law committed, [or] board procedures violated, or whether necessary findings of fact are supported by substantial evidence." *Reed v. Workers' Compensation Appeal Board (Allied Signal, Inc.)*, 114 A.3d 464, 468 n.3 (Pa. Cmwlth. 2015). Additionally, when raised, this Court will review for capricious disregard of evidence. *Id.*

[2] For purposes of this opinion, we have consolidated Employer's arguments.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

7

how a particular result was reached." Section 422(a) of the Act, 77 **P.S.** §834. Accordingly, the WCJ "shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section." *Id.* A decision is reasoned "if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003).

Claimant testified before the WCJ about his work injury; his symptoms; and his notice to Employer. The WCJ had the opportunity to assess Claimant's demeanor and found him credible. "[A] WCJ's observation of a witness's demeanor alone is sufficient to satisfy the reasoned decision requirement." *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 77 (Pa. Cmwlth. 2012). That Employer does not agree with the WCJ's credibility decision does not mean the WCJ's decision was not a reasoned one.

The WCJ also found Claimant's medical expert credible and more persuasive than Employer's expert on Claimant's cervical disc disease and the causation thereof. The WCJ summarized Dr. Dworkin's deposition testimony and identified the objective factors that led the WCJ to credit his opinion. First, Dr. Dworkin had been Claimant's treating physician and, thus, had more familiarity with Claimant. Second, diagnostic tests, particularly the MRI and EMG/nerve conduction study, supported Dr. Dworkin's opinion and diagnoses, particularly with respect to the causation of the disc problems by trauma.

Likewise, the WCJ explained her reasons for concluding that Dr. McHugh did not refute Dr. Dworkin's causation opinion. Dr. McHugh was not Claimant's treating physician and saw him once. *See School District of*

8

*Philadelphia v. Workers' Compensation Appeal Board (Hilton)*, 84 A.3d 372, 375 (Pa. Cmwlth. 2014) ("[I]t is well established that 'greater credence may be given to the testimony of a treating physician than to a physician who examines simply to testify for litigation purposes.'" (quoting *D.P. "Herk" Zimmerman, Jr., Incorporated v. Workmen's Compensation Appeal Board (Himes)*, 519 A.2d 1077, 1080 (Pa. Cmwlth. 1987)). Further, there were no diagnostic tests that supported Dr. McHugh's opinion.

The WCJ identified the evidence she accepted, the evidence she rejected, and her reasons therefor. The WCJ's explanations for her credibility determinations do not leave the court imagining "why the WCJ believed one witness over another." *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*, 893 A.2d 191, 196 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 635 (Pa. 2007). The WCJ's decision provides a reasonable basis for our appellate review and, thus, satisfies the reasoned decision requirement of Section 422(a) of the Act.

### Substantial Evidence

Next, Employer argues that the WCJ's decision was not supported by substantial evidence because:

> *Claimant did not sustain a work injury; has no medical proof of an acute injury; did not contemporaneously document any medical allegation of a work injury; did not make any allegation of a work injury until many months later; continued to work for many months in a full unrestricted duty capacity until laid off;* did not provide medical records to his medical expert, Dr. Dworkin; blatantly lied to the Judge's face about his prior and ongoing symptomatic cervical condition; had an MRI ordered for his pre-existing non-work related arthritis condition that Dr. Dworkin attempted to convert to a work injury; gave different accounts of the "mechanism of injury" to almost every person he talked to, including the Judge on two occasions; and produced no

9

evidence other than his extremely questionable testimony of corroborating witnesses for the alleged injury event; on which his stories changed over the course of two testimonies as well.

Employer's Brief at 36 (emphasis added). Claimant responds that Employer's disagreement with the WCJ's findings and credibility determinations are not grounds for reversal.

Substantial evidence is such relevant evidence as a reasonable mind might accept to support a finding of fact. *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990). In evaluating a substantial evidence challenge, the court may not reweigh the evidence or credibility determinations. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). Additionally, "[the Court] must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence." *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi),* 78 A.3d 1233, 1239 (Pa. Cmwlth. 2013). Finally, "[i]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Lahr Mechanical v. Workers' Compensation Appeal Board (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (*quoting Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005)). With these principles in mind, we consider Employer's arguments.

The WCJ explained her findings of fact as follows:

The record, particularly the credible testimony of Dr. Dworkin and [] Claimant, established that [] Claimant had a work injury in the course of his employment with [Employer] on June 25, 2014 and a resultant total disability since January 15, 201[5], specifically the date of Dr. Dworkin's first evaluation of []

10

Claimant. The record, particularly Dr. Dworkin's testimony, established that the nature of [] Claimant's work injury is: significant neck and right arm pain, right sided cervical radiculopathy, 2 level disc injuries at the levels of C5-6 with disc herniation and narrowed foramen, painful syndrome, and disc bulge at the levels of C6-7.

WCJ Decision, 2/1/2016, at 11, F.F. No. 36. She explained her credibility determinations as follows:

> … *Claimant is credible to an extent, specifically the occurrence of the alleged work injury and lack of capability for the performance of his pre-injury job*, on the basis of his demeanor during his testimony at a hearing before the Judge. Dr. Dworkin is more credible and more persuasive than Dr. McHugh with respect to the diagnoses of [] Claimant's conditions and causation because Dr. Dworkin is and has been [] Claimant's treating physician in contrast to Dr. McHugh as an evaluating physician for [Employer], because Dr. Dworkin has a greater familiarity with [] Claimant's conditions than Dr. McHugh on the basis of Dr. Dworkin's several evaluations of [] Claimant's conditions on several dates in contrast to Dr. McHugh's evaluation of [] Claimant on 1 date, because the results of the diagnostic tests of [] Claimant and particularly the Magnetic Resonance Imaging (MRI) and electromyogram (EMG)/nerve conduction study (NCS) support Dr. Dworkin's opinions about the diagnoses, because Dr. Dworkin gave rational[] explanations about the causation of the diagnoses conditions and particularly with respect to the physical characteristics of the disc conditions, and because Dr. McHugh didn't credibly refute Dr. Dworkin's testimony about the causation of the disc conditions of the basis of the physical characteristics of the disc conditions.

*Id.* at 3, F.F. No. 2 (emphasis added). The Board affirmed the WCJ. The Board acknowledged the evidence that Claimant had been treated for neck and upper back pain prior to the work accident. Nevertheless, "the WCJ specifically found that while Claimant did, in fact, have preexisting neck issues, there was no evidence that he suffered from any radicular right arm symptoms prior to the work incident, or had

11

symptoms to the same extent as he did after June 25, 2014." Board Adjudication at 6-7.

The WCJ considered Employer's testimony and documentary evidence, but she rejected it. It is our task to determine, viewing the record in the light most favorable to Claimant, whether the record contains substantial evidence to support the WCJ's findings. Employer's arguments about the sufficiency of the evidence go to the weight and credibility of the evidence. "[T]he WCJ, as fact-finder, has complete authority over questions of witness credibility and evidentiary weight." *Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015).

Employer argues that there is no proof of a work injury. It asserts that Claimant continued to work, did not seek medical treatment for his alleged work injury and did not report a work injury until he was laid off. However, the WCJ credited Dr. Dworkin's testimony on Claimant's disc herniations and their cause. A delay in seeking treatment for a work injury does not render a claimant's testimony incompetent because an injury may develop over a period of time. *See Curran v. Workmen's Compensation Appeal Board (Maxwell Industries),* 664 A.2d 667, 670 (Pa. Cmwlth. 1995). Further, the WCJ credited Claimant's testimony that he did report the accident on the day it occurred.

Employer asserts that Claimant has given conflicting accounts of the "mechanism of injury," which renders the WCJ's finding on that issue not supported by substantial evidence. Employer, however, does not identify those specific portions of Claimant's testimony which are allegedly inconsistent; instead, Employer summarily states "[n]owhere in the record does Claimant get his own injury story straight." Employer's Brief at 33.

12

Regarding the mechanism of injury, Claimant testified, in relevant part:

> Me and a teamster, Kevin Dougherty, we went up to King of Prussia to [a store ….] They sell the big pipe. And we loaded that on the truck ….

> ***

> [We] went to unload [the pipe], put a sling around it. It wouldn't come out, so then me and the teamster jumped in the truck, tried to get it out because it was all corrugated and they were all jammed in together. So he jumped down. I wiggled between the pipe and the truck. I'm in the back of the truck. And I pushed up, got it out. And as we were pulling it out, we had the sling on it. When he pulled down, it went up. So he put all the pressure down. That's when it came down on my head.

N.T., 3/4/2015, at 11-12; R.R. 65a-66a.[4] Subsequently, when recalled to testify about his work injury, Claimant stated:

> Well, at first, [the pipe] wouldn't come out of the truck. The teamster got down. Then I stayed up there and got underneath the --- underneath the pipe and in-between the bay. And popped it out in the corner, because it was in like this (indicating).

> It was like eight foot of it sticking out of the bed. And I popped it out. Then he started pulling it, which got it going fine. It was flat on the tailgate. And we were kind of just --- I was picking it up and pushing it, because it wouldn't slide.

> And then all of [a] sudden --- halfway through the bay, when I --- when I went to push up, he went down and I stuck it all the way up. And then he came up with the bucket off the tailgate. It was in my hands. And that['s] when it came out of my hands and hit me in the head.

---

[4] Claimant testified that both Kevin Dougherty and William Phillips were present at the time the pipe was unloaded from the truck. N.T., 3/4/2015, at 13-14; R.R. 67a-68a.

13

N.T., 10/7/2015, at 6-7; R.R. 240a-41a.[5]  Claimant's testimony regarding the mechanism of injury is not inconsistent.

Nor does his account conflict with what he told Dr. Dworkin.  Claimant told Dr. Dworkin that he was lifting large pipes from the back of a truck, which "fit fairly tight in the back of the tru[c]k bay."  Dworkin Deposition at 10-11; R.R. 99a-100a.  Accordingly, Claimant and another individual "were lifting and pushing the pipe, and the back end where he was underneath the back end of the pipe, and it suddenly tipped and struck him violently in the head."  *Id.*  In sum, Claimant has consistently stated that a pipe hit him on the head while unloading it from the truck.

Employer contends that there was no objective evidence that Claimant suffered any injury at work on June 25, 2014.  However, the WCJ found that diagnostic tests for Claimant, and particularly the July 2014 MRI and EMG/NCS, supported Dr. Dworkin's opinion about the trauma that occurred in June of 2014.  The WCJ's finding is supported by substantial evidence.

Employer next asserts Claimant was not truthful about his prior cervical condition and notes that Dr. Dworkin was unfamiliar with this medical history.  Further, the WCJ did not credit the testimony of Claimant and Dr. Dworkin with respect to Claimant's prior cervical treatment history.  This latter finding does not render the remainder of their testimony not credible.  This is so because the WCJ "is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part."  *Williams v. Workers' Compensation Appeal Board (USX Corp. – Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004).

Employer contends that substantial evidence does not support the WCJ's finding that Claimant sustained a work injury because Claimant did not call

---

[5] Additionally, Claimant stated that he was working with Paul Fellows, Gene Short and Kevin Dougherty on the day he was injured.  N.T., 10/7/2015, at 5-6; R.R. 239a-240a.

his primary care physicians, Drs. Busillo and Traverso, as witnesses to testify. To the extent that Employer is asserting the "missing witness rule," which permits an adverse inference, it applies only "where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties." *Wood v. Workers' Compensation Appeal Board (Country Care Private Nursing)*, 915 A.2d 181, 187 (Pa. Cmwlth. 2007). Drs. Busillo and Traverso were available to both parties to the litigation. Employer could have deposed Drs. Busillo and Traverso, but it chose not to do so.

Finally, Employer contends that the WCJ's finding on its notice of Claimant's alleged work injury is not supported by substantial evidence. In support, it notes that its witnesses "testified unequivocally – unrebutted – that they were never made aware of any alleged work injury for June 25, 2014, and knew nothing about an alleged work injury right up until after a Claim Petition was filed months later, and they were served with a copy." Employer's Brief at 34. However, their statements were rebutted. Claimant testified that he told Employer about his work injury, and the WCJ found Claimant's testimony more credible and persuasive than that of Employer's witnesses, a determination within her exclusive province as fact-finder. It is irrelevant whether the record contains evidence to support findings other than those made by the WCJ. *Furnari v. Workers' Compensation Appeal Board (Temple Inland)*, 90 A.3d 53, 60 (Pa. Cmwlth. 2014). In short, Claimant's credited testimony supports the WCJ's finding that Employer received timely notice of Claimant's work injury.

### Incompetent Evidence

Employer contends that the WCJ erred because she relied upon Dr. Dworkin's expert opinion, which was not competent. Employer challenges the

15

competency of Dr. Dworkin's testimony because he had not studied all of Claimant's medical records.

This Court has explained that "a medical expert's opinion is not rendered incompetent unless it is based solely on inaccurate information." *Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197, 1203 (Pa. Cmwlth. 2006). Further, "[t]he fact that a medical expert does not have all of a claimant's medical records goes to the weight given the expert's testimony, not its competency." *Id.* (quoting *Marriott Corp. v. Workers' Compensation Appeal Board (Knechtel)*, 837 A.2d 623, 631 n.10 (Pa. Cmwlth. 2003)).

To arrive at his opinion regarding Claimant's work injuries, Dr. Dworkin reviewed Dr. Levenberg's records, the MRI films of the cervical spine taken on July 10, 2014, and an x-ray report. In addition, Dr. Dworkin conducted an EMG/NCS. Further, Dr. Dworkin did a physical examination of Claimant and has treated Claimant for neck pain since January 2015. Although Dr. Dworkin did not review all of Claimant's medical history, such as the medical records from Claimant's primary physician, this goes to the weight of his testimony not its competency. *See Pryor*, 923 A.2d at 1203.

It is undisputed that Dr. Dworkin took a recitation from Claimant about the work accident. The record shows that Claimant has consistently stated that a pipe hit him on the top of his head. Thus, we cannot conclude that the description provided by Claimant to Dr. Dworkin was false nor can we conclude that Dr. Dworkin's opinion was dependent on inaccurate information that would render it incompetent.

**Capricious Disregard of Evidence**

16

Employer argues that the WCJ disregarded evidence of record. Specifically, Employer contends that the WCJ ignored the facts that Claimant made untrue statements;[6] that medical records were withheld; that Claimant's doctor did not know about his medical history; that there was no contemporaneous medical proof of a work injury; that the contemporaneous medical records contradict the allegation of a work injury; that the medical records show pre-existing degenerative issues and not an acute or traumatic injury; and that Claimant's statements about the mechanism of injury were not consistent. Employer's Brief at 28. Claimant responds that the WCJ "considered, reviewed, and weighed all the evidence of record from both parties." Claimant's Brief at 25. We agree.

"A capricious disregard of evidence occurs only when the fact-finder deliberately ignores relevant, competent evidence." *Williams*, 862 A.2d at 145. "[W]here there is substantial evidence to support an agency's factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 n. 14 (Pa. 2002).

Here, the WCJ did not ignore the evidence of record as evidenced by her extensive summation of the evidence in this matter. The WCJ summarized the testimony of each witness, including the experts, and detailed that evidence she found credible and that which she rejected as not credible, and the reasons she made

---

[6] Employer argues that Claimant "lied to [the WCJ's] face" about his prior cervical treatment history. Claimant was asked if he had any prior neck injuries:

    Q. "Andrew, have you had any neck injuries before?"
    A. "No. Never."

N.T., 3/4/15 at 23; R.R. 77a. Employer asserts that this statement is patently false. Employer understands "injury" to mean medical condition. Claimant may have understood it to refer to neck trauma. The factfinder resolved the ambiguity in favor of Claimant.

such determinations. "Such an express consideration and rejection, by definition, is not capricious disregard." *Williams*, 862 A.2d at 145.

## Public Policy

Finally, Employer contends that the WCJ's decision to credit Claimant's testimony offends public policy because

> Claimant lied to [the WCJ]; hid his medical records; gave inconsistent stories of an alleged mechanism of injury; produced no independent corroborative evidence of any witnesses to the alleged incident; and produced no actual competent medical evidence to show he sustained an acute injury, rather than continuing to treat for his pre-existing non-work related degenerative cervical condition.

Employer's Brief at 37-38. Claimant responds that Employer's assertions constitute no more than "vague and meritless smoke screens[.]" Claimant's Brief at 28.

Although termed as a public policy argument, Employer really challenges the WCJ's credibility and factual determinations. "[T]he WCJ, as fact-finder, has complete authority over questions of witness credibility and evidentiary weight." *Verizon*, 116 A.3d at 1162. On appeal, this Court will not "reweigh the evidence or [ ] review the credibility of witnesses." *Bethenergy Mines*, 612 A.2d at 437. Accordingly, we reject Employer's public policy argument.

## Conclusion

For the above-stated reasons, we affirm the order of the Board.

_____
MARY HANNAH LEAVITT, President Judge

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Phillips Enterprise, Inc.,              :
           Petitioner         :
                         :
        v.                :  No. 152 C.D. 2017
                         :
Workers' Compensation Appeal     :
Board (Constrisciani),             :
          Respondent     :

# **O R D E R**

AND NOW, this 8th day of November, 2017, the order of the Workers' Compensation Appeal Board dated January 13, 2017, is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge